**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and Industrial Risk Insurers, Appellants,**

v.

**JOHN ZINK COMPANY, et al., Appellees.**

No. 13–96–282–CV.

Court of Appeals of Texas,
Corpus Christi.

May 28, 1998.

Rehearing Overruled June 18, 1998.

Peter Alden T. Sartin, Dallas, for Appellants.

Elizabeth Bonvillain Kamin, Elizabeth Hill Painter, Woodard, Hall & Primm, Houston, Gaston M. Broyles, Jr., Broyles & Pratt, Corpus Christi, Deborah R. Sundermann, Corpus Christi, Kathryn Snapka, Law Offices of Kathryn Snapka, Corpus Christi, John A. Smith, III, Frank E. Weathered, Dunn & Weathered, Corpus Christi, for Appellees.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

**OPINION**

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal from a summary judgment in an insurance subrogation case. Appellants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania and Industrial Risk Insurers (collectively, "Insurers") brought subrogation claims against appellees, John Zink Company, Puffer–Sweiven Corpus Christi, Inc., Puffer–Sweiven, Inc., Puffer–Sweiven Trading Corporation, Puffer–Sweiven Texas, Inc., Fisher Controls In-

ternational, Fisher Controls Installation & Service Company, Fisher Controls Company, Inc., and Valtek Company.[1] Appellees moved for and were granted summary judgment.[2] By ten points of error, the Insurers contend the trial court erred in denying their special exceptions and in granting appellees' motions for summary judgment. We reverse and remand.

1. FACTUAL BACKGROUND

Valero[3] entered into a $500 million contract with Kellogg[4] to design, engineer, and construct an expansion to a refinery in Corpus Christi. The Insurers allege that on July 13, 1984, a vertical air pre-heater exploded and caused property damage to the refinery. They also allege that on May 27, 1985, a fire occurred in a citrate scrubber stack as a result of malfunctions in bypass valves, a computing controller card, and a housing cabinet. The refinery again sustained severe damages. Because the damages were covered by insurance policies issued by both National Union and Industrial Risk, claims for the property damages were paid by both Insurers.[5] The Insurers paid approximately $3.6 million to Valero ($1.6 million for the air pre-heater claim and $2 million for the citrate scrubber stack claim). The claims were paid before any subrogation suit was filed.

The contract between Valero and Kellogg imposed certain obligations on the parties, including that Kellogg and its subcontractors purchase liability insurance. The Insurers allege that each of the appellees in this case were subcontractors of Kellogg who in some manner were responsible for the failed equipment. The Insurers specifically allege that:

1. We will refer to the individual appellees as follows:
   a) "Zink" John Zink Company;
   b) "Puffer–Sweiven" Puffer–Sweiven Corpus Christi, Inc., Puffer–Sweiven, Inc., Puffer–Sweiven Trading Corporation, Puffer–Sweiven Texas, Inc.;
   c) "Fisher" Fisher Controls International, Fisher Controls Installation & Service Company, Fisher Controls Company, Inc.; and
   d) "Valtek" Valtek Company.

2. H.B. Zachry Company joined in one summary judgment motion but is not part of this appeal.

3. The original insured was Saber Energy, Inc. Valero Energy Corporation is Saber Energy's successor in interest. Saber Energy and Valero Energy will be referred to as "Valero."

4. "Kellogg" includes M.W. Kellogg Company, M.W. Constructors, Inc., M.W. Kellogg Constructors, Inc., Kellogg Rust Synfuels, Inc., and Henely/M.W.K. Holdings Inc.

5. National Union paid fifty percent of the claims and Industrial Risk paid fifty percent of the claims.

(1) Zink manufactured the defective air pre-heater; (2) Fisher manufactured the defective computer-control system; and (3) the system was distributed by Puffer–Sweiven and Valtek.

The Insurers filed two suits against appellees seeking to recover the amounts they paid to Valero. These cases were consolidated with an action brought by Valero against appellees for recovery of uninsured losses arising from the same occurrences. Prior to consolidation, the Insurers intervened in Valero's lawsuit. Subsequently, Kellogg and another defendant, Ingersoll–Rand Company, moved for and were granted summary judgment against Valero. The Insurers' causes of action were severed into this case and abated pending Valero's appeal of Kellogg's and Ingersoll–Rand's summary judgment. We affirmed the summary judgment in *Valero Energy Corp. v. M.W. Kellogg Constr. Co.*, 866 S.W.2d 252 (Tex.App.—Corpus Christi 1993, writ denied) (*"Valero I"*).[6] The trial court allowed this case to proceed and subsequently granted the complained of summary judgment.

## 2. The Claims and Grounds for Summary Judgment

Each subrogation suit claimed products liability and negligence related to the manufacture and/or installation of a different product. The suits also alleged breach of contract and breach of an agreement to indemnify Valero through insurance obtained to cover losses such as those at issue. Related to their allegation that appellees failed to obtain insurance coverage, the Insurers also alleged breach of fiduciary duty, breach of the duty of good faith and fair dealing, violation of article 21.21 of the Texas Insurance Code, and breach of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA), to the extent the DTPA is incorporated into the Texas Insurance Code. The Insurers sought recovery from all applicable insurance policies available to appellees, and

from the individual defendants, if they failed to obtain the requisite insurance coverage.

In their motions for summary judgment, appellees claimed that the Insurers' wholly derivative claims had been eliminated when we found in *Valero I* that, under the terms of the contract, Valero had waived all of its claims against Kellogg and its subcontractors. In addition, appellees argued that under the law of the case doctrine, the Insurers were bound by *Valero I*. Puffer–Sweiven and Zink also contended that summary judgment was proper because limitations and judicial estoppel barred the Insurers' claims. Zink further argued that the express terms of the Kellogg/Zink contract precluded the Insurers' claims.

The Insurers specially excepted and responded to appellees' motions. The Insurers' special exceptions were denied. By ten points of error, the Insurers contend the trial court erred in:

1) granting summary judgment;

2) granting summary judgment on the basis that *Valero I* barred the Insurers' different claims in a separate case;

3) granting summary judgment on the basis of *Valero I* because Valero did not raise the Insurers' claims in that claim;

4) denying the Insurers' special exceptions to the "Background" portion of the motions which asserted that the Insurers had agreed to be bound by *Valero I* and then granting summary judgment on that basis;

5) denying special exceptions and granting summary judgment because the Insurers did not agree to be bound on issues not addressed in *Valero I*;

6) granting summary judgment based on the doctrine of the law of the case;

7) granting summary judgment based on the terms of the alleged agreement between Kellogg and Zink;

8) granting summary judgment based on any statute of limitations;

6. We later affirmed a second summary judgment in a related matter, *Ingersoll–Rand Co. v. Valero Energy Corp.*, 953 S.W.2d 861 (Tex.App.—Corpus Christi 1997, no writ) (*"Valero II"*). Our holding in *Valero II* is not relevant to the issues

before us. *Valero II* only addressed the issue of whether Kellogg and Ingersoll–Rand should be indemnified for attorney's fees under the contract.

9) denying special exceptions going to the absence of pleadings to support summary judgment based on judicial estoppel; and

10) granting summary judgment based on judicial estoppel.

### 3. STANDARD OF REVIEW

The proper inquiry .on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden (1) to establish as a matter of law that there remained no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or (2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied). When a party moves for summary judgment on several theories and the trial court enters summary judgment without specifying the ground relied upon, we affirm the summary judgment if any one of the theories advanced is meritorious. *State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Martinez v. Corpus Christi Area Teachers Credit Union,* 758 S.W.2d 946, 950 (Tex. App.—Corpus Christi 1988, writ denied).

A motion for summary judgment must expressly state the grounds upon which it is made. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339 (Tex.1993). Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex. 1979); *Carlisle v. Philip Morris, Inc.,* 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied); *Dhillon v. General Accident Ins. Co.,* 789 S.W.2d 293, 295 (Tex.App.—Houston [14th Dist.] 1990, no writ); see *City of Mission v. Ramirez,* 865 S.W.2d 579, 581 (Tex. App.—Corpus Christi 1993, no writ). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a court may not rely on briefs or summary judgment evidence in determining whether grounds are expressly presented. *McConnell,* 858 S.W.2d at 339.

### 4. APPLICATION

#### a. *Wholly Derivative Claims*

■ As their first ground for summary judgment, appellees assert that the Insurers' claims are wholly derivative of and can be no greater than Valero's claims. Appellees contend that because we found in *Valero I* that under the Valero/Kellogg contract Valero waived *all* its claims against Kellogg's subcontractors, the Insurers have no causes of action against the subcontractors. Appellees argue they hold the same legal position under the contract as Kellogg's subcontractors, and because the Insurers' claims are derivative of Valero's, the Insurers have no causes of action against appellees.

■ Appellees' assertions regarding the derivative nature of the Insurer's claims are accurate. Upon payment of a loss under a policy, the insurer acquires the right to be subrogated *pro tanto* to any cause of action the insured may have against any third person whose acts caused the loss. *Magnolia Pipe Line Co. v. Security Union Ins. Co.,* 37 S.W.2d 1062, 1063 (Tex.Civ.App.—Beaumont 1931, no writ); see *Stonewall Surplus Lines Ins. Co. v. Drabek,* 835 S.W.2d 708, 711 (Tex. App.—Corpus Christi 1992, writ denied); *International Ins. Co. v. Medical–Professional Bldg. of Corpus Christi,* 405 S.W.2d 867, 869 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). An insurer's right to subrogation derives from the rights of the insured, and is limited to those rights; there can be no subrogation where the insured has no

cause of action against the defendant. *Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Fishel's Fine Furniture v. Rice Food Mkt.*, 474 S.W.2d 539, 541 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ dism'd). The subrogees stand in the shoes of the one whose rights they claim, and the extent of the subrogees' remedy and the measure of their rights are controlled by those possessed by the subrogor. *First Tape, Inc.*, 817 S.W.2d at 145; *McAllen State Bank v. Linbeck Constr. Corp.*, 695 S.W.2d 10, 24 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The general rule is that a release between the insured and the offending party prior to the loss destroys the insurance company's rights by way of subrogation. *First Tape, Inc.*, 817 S.W.2d at 145; *Medical–Professional Bldg. of Corpus Christi*, 405 S.W.2d at 870.

In order to adequately assess appellees' wholly derivative argument, we must review our holding in *Valero I* and the motions for summary judgment in that case. Kellogg and Ingersoll–Rand moved for summary judgment on the ground[7] that, under the terms of the contract, Valero had agreed to exculpate and indemnify Kellogg and its subcontractors for any liabilities. The contract provisions relied on are as follows:

> 6.8  OWNER shall release, defend, indemnify and hold harmless CONTRACTOR, its subcontractors and affiliates and their employees· performing services under this Agreement against all claims, liabilities, loss or expense, including legal fees and court costs in connection therewith, arising out of or in connection with this Agreement or the Work to be performed hereunder, including losses attributable to CONTRACTOR'S negligence, to the extent CONTRACTOR is not compensated by insurance carried under this ARTICLE. Owner shall obtain for the benefit of Contractor, its subcontractors and affiliates and their employees, waiver of subrogation rights under all its applicable insurance policies.

> 6.9  Neither CONTRACTOR nor its affiliates nor its subcontractors or vendors,

either individually or jointly shall be liable to OWNER or its affiliates, irrespective of whether alleged to be due to negligence or otherwise, for loss of anticipated profits or interest, for loss by reason of Plant shutdown or non-operation of the Plant or other equipment, for loss of catalysts or chemicals or for any consequential or special loss or damage arising from any reason whatsoever.

We find, however, that Kellogg's motion for summary judgment also stated, "Under the Contract, insurance was established as the exclusive remedy for any liability." Pertinent portions of the contract state as follows:

> 6.2(b)  Comprehensive General Liability Insurance (including Contractual Liability, Contractor's Contingent Liability and Explosion, Collapse and Underground damage) covering Bodily Injury and Property Damage with a Combined Single Limit of $2,000,000 per occurrence.... CONTRACTOR'S liability with respect to OWNER'S property so covered shall be limited to the amount of such insurance ...

> 6.3  CONTRACTOR'S subcontractors will be required to carry insurance of the types described in ... paragraph 6.2 above, as appropriate, at limits considered adequate in accordance with CONTRACTOR'S standard subcontract procedures.

> 6.7  CONTRACTOR agrees that it will defend, indemnify, and hold OWNER harmless against all claims, liability, loss and expense including legal fees and court costs in connection therewith, arising out of this agreement or the work to be performed hereunder, to the extent the CONTRACTOR is compensated by insurance required by this Agreement.

Appellees' motions for summary judgment do not allege that, by the terms of the contract, Valero waived its insurance claims or that Valero was asserting insurance claims in its lawsuit. Because summary judgment may only be granted on grounds expressed in the motion, we conclude that appellees read *Valero I* too broadly.

---

**7.** Although the motions contain other grounds, this was the relevant ground affirmed in *Valero I*.

In *Valero I*, we were asked to consider whether Valero contractually waived its claims for gross negligence and products liability. *Valero*, 866 S.W.2d at 256. Specifically, Valero argued that a waiver of gross negligence claims offended public policy and that a general waiver of liability was not sufficient to waive products liability causes of action. *Id.* at 257. After setting forth section 6.8 of the contract, stating that Valero held harmless Kellogg and its subcontractors "against all claims ... to the extent CONTRACTOR is not compensated by insurance[,]" we held that Kellogg and Ingersoll–Rand were absolved "of all liability sounding in products liability and gross negligence." *Id.* at 257–58. We also held that the waiver of gross negligence claims in that case did not offend public policy. *Id.* at 258.

Nowhere in the opinion did we specifically hold that all of Valero's liability claims were waived by the contract. Moreover, we could not so hold because Valero's insurance claims were not expressly addressed by the motion for summary judgment and therefore, were not before the trial court or this Court. To the extent that *Valero I* may be interpreted to hold that all of Valero's claims were waived by the contract, we hold that the waiver must be limited because of our reliance on sections 6.8 and 6.9 of the agreement. In other words, Valero agreed to absolve Kellogg and its subcontractors of liability for claims to the extent the contractor was not compensated by insurance and for those losses specified in section 6.9.

Although the Insurers' claims are wholly derivative of Valero's, they seek recovery for insurance claims Valero may have against the appellees. As is evident from contract provisions 6.2, 6.3, and 6.7, the contract required liability insurance and regulated its applicability. Whether Valero has insurance claims against appellees, subrogation rights, and appellees' status under the terms of the contract are some issues that have not been addressed by any motion for summary judgment. Thus, if the trial court granted summary judgment in favor of appellees on the ground that, pursuant to *Valero I*, all of the Insurers' wholly derivative claims were waived by the terms of the contract, we conclude the court committed error.

Because summary judgment may be properly granted on any ground raised by the motion, we must consider the validity of the remainder of appellees' grounds.

### b. *Law of the Case*

■ As their second ground for summary judgment, appellees contend that our holding in *Valero I* is the law of the case. Appellees essentially reassert the arguments expressed in the first ground.

■ Under the law of the case doctrine, the initial determinations of questions of law in a case are held to govern throughout the subsequent stages of the case. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986); *Trevino v. Turcotte*, 564 S.W.2d 682, 685 (Tex.1978); *Med Ctr. Bank v. Fleetwood*, 854 S.W.2d 278, 283 (Tex.App.—Austin 1993, writ denied); *Transport Ins. Co. v. Employers Casualty Co.*, 470 S.W.2d 757, 762 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.). The doctrine applies only to questions of law and not to questions of fact. *Hudson*, 711 S.W.2d at 630. The doctrine does not necessarily apply if the issues and facts are not substantially the same in the subsequent trial. *Id.*; *Med Ctr. Bank*, 854 S.W.2d at 283; *Transport Ins. Co.*, 470 S.W.2d at 762. This is not the same case as or a subsequent stage of *Valero I*, nor are the issues the same. Therefore, the law of the case doctrine is not applicable in this instance. If the trial court granted summary judgment in favor of appellees on this ground, we conclude the court committed error.

For much the same reason, claims that *res judicata* and collateral estoppel bar relitigation of the issues at hand fail. Arguably at best, appellees' motions raised these theories as grounds for granting summary judgment by one sentence in their law of the case argument and by a footnote in one motion.

■ Although the Insurers do not have a separate point of error complaining of summary judgment granted on these theories, they did include a broad point which generally asserts that summary judgment favoring appellees is error. Such a broad point of

error is sufficient to assign error if the appellant attacks every basis for summary judgment. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

The Insurers argue on appeal that *res judicata* does not bar recovery of their vested claims and that the issues or facts relevant to their causes of action have not been fully and fairly litigated. Because these arguments address the various elements of *res judicata* and collateral estoppel, they are specific enough to attack appellees' vaguely raised grounds. Therefore, we will consider whether summary judgment granted on either theory would be proper.

■ *Res judicata* bars litigation of all issues connected with a cause of action or defense that, with the use of proper diligence, might have been tried in the prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985); *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984); *Housing Authority of City of Corpus Christi v. Massey,* 878 S.W.2d 624, 626 (Tex.App.—Corpus Christi 1994, no writ); *Ambrose v. Mack,* 800 S.W.2d 380, 382 (Tex.App.—Corpus Christi 1990, writ denied). When a prior judgment is offered in subsequent litigation in which there is identity of parties, issues, and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment. *Bonniwell,* 663 S.W.2d at 818; *Massey,* 878 S.W.2d at 626; *Ambrose,* 800 S.W.2d at 382.

■ Collateral estoppel is narrower than *res judicata. Bonniwell,* 663 S.W.2d at 818. It is frequently characterized as issue preclusion because it bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in the prior suit, regardless of whether the second suit is based upon the same cause of action. *Id.; Massey,* 878 S.W.2d at 626; *Ambrose,* 800 S.W.2d at 382. To invoke the doctrine of collateral estoppel, a party must show that: (1) the facts to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to

the judgment in the first action; and (3) the present parties were adversaries in the prior action. *Mower v. Boyer,* 811 S.W.2d 560, 563 (Tex.1991); *Massey,* 878 S.W.2d at 626; *Ambrose,* 800 S.W.2d at 382.

■ The motion for summary judgment in *Valero I* was filed by the defendants, Kellogg and Ingersoll–Rand, who agreed that the Insurers' claims were not a part of the motion. Appellees apparently did not object to the agreement and were not parties to the motion. Thus, the present parties were not cast as adversaries in the previous summary judgment. In addition, the liability facts in this case have never been fully litigated, nor were those facts essential to the summary judgment in *Valero I.* Moreover, the issue of whether insurance claims exist under the terms of the contract was not litigated. If the trial court granted summary judgment in favor of appellees on the grounds of *res judicata* or collateral estoppel, we conclude the court committed error.

### c. *Limitations*

Zink and Puffer–Sweiven also moved for summary judgment on the ground that the Insurers' causes of action were barred by applicable, but unspecified, statutes of limitations. They mainly contended that the Insurers' pleadings, amended after summary judgment in *Valero I,* alleged new claims more than ten years after the cause of action accrued.

■ When a suit is filed before the limitations period expires, a cause of action alleged by an amended petition after the period expires is not barred by the statute of limitations unless those allegations do not relate to the original pleading. TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997); *see Harris v. Galveston County,* 799 S.W.2d 766, 769 (Tex.App.—Houston [14th Dist.] 1990, writ denied). In order to relate back to the original pleading, an amended pleading which changes the facts or grounds of liability or defense must not be wholly based on a new, distinct or different transaction or occurrence. TEX. CIV. PRAC. & REM. CODE ANN. § 16.068; *Leonard v. Texaco, Inc.,* 422 S.W.2d 160, 163 (Tex.1967); *Escam-*

*illa v. Estate of Escamilla by Escamilla,* 921 S.W.2d 723, 727 (Tex.App.—Corpus Christi 1996, writ denied); *Pineda v. PMI Mortgage Ins. Co.,* 843 S.W.2d 660, 667–68 (Tex.App.—Corpus Christi 1992), *writ denied,* 851 S.W.2d 191 (Tex.1993). Because the motions for summary judgment do not assert or establish that the amended pleadings were wholly based on new, distinct, or different transactions or occurrences, we conclude that granting summary judgment on this contention would be error.

▮ Zink also alleged, in connection with this ground, that because the equipment at issue was delivered in March 1982, any cause of action would have accrued before July 13, 1984, the date of the first explosion. Other than the March delivery date, no evidence explained when accrual should have occurred, why the claim accrued earlier, or why the time of the explosion is not the proper date. Given that the Insurers pleaded they could not have discovered any causes of action prior to the date of the first explosion, Zink had to establish the elements of the limitations defense as well as negate any special exception pleaded, such as the discovery rule. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex.1988). Because Zink did not do so, we conclude that granting summary judgment on this basis would be improper.

### d. Judicial Estoppel

Zink and Puffer–Sweiven also asserted that certain verified pleadings estopped the Insurers from bringing claims under the contract at issue. Although not specifically identified in the motions as judicial estoppel, we believe this is the theory upon which Zink and Puffer–Sweiven rely.

▮ The doctrine of judicial estoppel bars a party, who has successfully maintained a position in a prior judicial proceeding, from later adopting an inconsistent position, unless that party can show the prior statement was made inadvertently due to mistake, fraud, or duress. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *Owen v. Knop,* 853 S.W.2d 638, 641 (Tex. App.—Corpus Christi 1993, writ denied); *Welder v. Welder,* 794 S.W.2d 420, 431 (Tex.

App.—Corpus Christi 1990, no writ). The applicability of judicial estoppel is not limited to oral testimony, but applies with equal force to any sworn statement—whether oral or written—made in the course of a judicial proceeding. *Miller v. Gann,* 842 S.W.2d 641, 641 (Tex.1992). Judicial estoppel is not established in the absence of any evidence that the averment, on which a claim of estoppel is based, was made in the course of other judicial proceedings. *Wells v. Kansas Univ. Endowment Ass'n,* 825 S.W.2d 483, 488 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Balaban v. Balaban,* 712 S.W.2d 775, 778 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Because Zink and Puffer–Sweiven did not present evidence establishing all of the elements of judicial estoppel, we conclude they are not entitled to summary judgment on this ground. The trial court erred if it granted summary judgment on this ground.

### e. The Kellogg/Zink Contract

Zink asserts it is entitled to summary judgment under the terms of an alleged contract between Kellogg and Zink. Zink's motion reiterates that the Insurers' claims are no greater than Valero's, and then states: "Valero's claims, which have been dismissed with prejudice as to John Zink, were for consequential damages, and the Kellogg/John Zink agreement expressly states that John Zink shall not be liable for such consequential damages." A purchase order, bearing Zink's Standard Terms of Sale, is attached to the motion and does appear to exclude Zink's liability for consequential damages. We find no evidence in the record, however, showing that Valero was bound by the alleged agreement, or that Valero's claims against Zink were dismissed because of that agreement. The motion for dismissal and the dismissal order are neither attached to nor referenced in the motion for summary judgment. Without such evidence, Zink did not establish that the Insurers were also bound by the agreement or the dismissal of Valero's claims against Zink, as a matter of law. We conclude that summary judgment granted on this ground would be error.

848

Having found that summary judgment was improper on each ground raised by appellees, we sustain the Insurers' first, second, third, sixth, seventh, eighth, and tenth points of error. We decline to address the remaining points of error because they are not necessary to the disposition of this case. TEX. R.APP. P. 47.1.

We reverse the trial court's summary judgments and remand the case to the trial court for further proceedings.