COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-08-079-CV

MALCOLM BARBER AND APPELLANTS

LEANN BARBER

V.

LEO C. MERCER, JR., M.D. APPELLEE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

Appellants Malcolm and Leann Barber sued Leo C. Mercer, Jr., M.D., appellee, and others for negligence in the treatment and care of Malcolm’s heart condition during a heart bypass procedure.  Dr. Mercer was the general surgeon who assisted the lead surgeon by harvesting a saphenous vein from Malcolm’s leg.  This case currently involves only Dr. Mercer.  The Barbers challenge the trial court’s dismissal of their claim against Dr. Mercer for failure to comply with the expert report requirements of the civil practice and remedies code.  We reverse and remand.

Factual and Procedural Background

The Barbers sued numerous defendants, including Dr. Mercer, for negligence in connection with the diagnosis and surgical treatment of Malcolm’s heart condition (an interlocutory appeal between the Barbers and several of the other defendants is currently pending in this court under cause number 2-07-353-CV).  Malcolm underwent a multi-vessel coronary artery bypass graft (CABG) procedure at United Regional Health Care System in Wichita Falls, Texas, in early 2004.  The surgery lasted over six hours, and afterwards, Malcolm suffered numbness, pain, and weakness in his left upper arm that led to a diagnosis of left ulnar nerve lesion and ulnar cubital syndrome.  He required additional surgery and therapy and ultimately sued the physicians, nurse practitioners, and the hospital involved in his care for damages resulting from the padding and positioning of his arm.  Dr. Mercer, a general surgeon, had assisted Mikko P. Tauriainen, M.D., a cardiovascular and thoracic surgeon, in performing the CABG procedure on Malcolm; Dr. Mercer was responsible for harvesting the left saphenous vein from Malcolm’s leg.

In the Barbers’ original petition they alleged multiple basis of negligence including specifically that the various defendants negligently failed to timely, properly, safely, or adequately supervise or care for Malcom’s condition during the CABG procedure and postoperatively, particularly relating to his “left upper extremity difficulties.”  Furthermore, the Barbers alleged that several of the defendant doctors failed to adequately train or supervise others who were assisting in Malcom’s procedure.

After they filed suit, the Barbers timely filed their expert reports.  Dr. Mercer objected to the Barbers’ first expert report dated August 5, 2006 on the grounds that their expert, Jeffrey Alan Wagner, M.D., M.B.A., a board certified anesthesiologist, was not qualified to provide the report and that Dr. Wagner failed to provide a fair summary of his opinions in accordance with section 74.351(r)(6) of the civil practice and remedies code.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2009).  After a hearing on the issue in July 2007, the trial court specifically overruled Dr. Mercer’s objections to Dr. Wagner’s qualifications to opine, but it sustained his objections as to the report’s failure to provide a fair summary of the applicable standard of care, breach of that standard as to each defendant, and causation under section 74.351.

On September 25, 2007, the trial court entered an order giving the Barbers thirty days to correct the defects in their first expert report as to Dr. Mercer.
(footnote: 1)  The order stated, “[O]bjections to the Expert Report of Jeffery Alan Wagner, M.D. are hereby OVERRULED to the extent that such Objections challenge Dr. Wagner’s qualifications to opine as an expert, pursuant to Sections 74.401 and 74.402 . . . .”  However, the trial court denied the Barbers’ oral request to supplement 
with a new expert 
as to defendants Mercer, Robert Lee Moss, M.D., United Regional Health Care System, Inc., and Shellie Barnett-Wright, PA-C.  The Barbers immediately filed a more extensive report by Dr. Wagner, particularly expanded as to standard of care, breach, and causation as to each named defendant since the trial court had denied Dr. Mercer’s objections to Dr. Wagner’s qualifications.

After the Barbers filed their amended report through their same expert, Dr. Wagner, Dr. Mercer filed a second motion to dismiss, which the trial court granted on the sole ground that the expert was not qualified “to opine as an expert against Dr. Mercer.”
(footnote: 2)  In all other respects, the trial court determined that the expert’s amended report, dated September 28, 2007, “satisfies the requirements of section 74.351 . . . as to Dr. Mercer, and all other objections by Dr. Mercer are overruled.”  The trial court then granted Dr. Mercer’s motion to dismiss him with prejudice.  The Barbers appealed.  
See 
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(10) (Vernon 2008).

Issue on Appeal

In the Barbers’ sole issue on appeal, they contend that the trial court abused its discretion in granting Dr. Mercer’s second motion to dismiss on the basis that Dr. Wagner was not a qualifying “expert” sufficient to give an opinion on whether Dr. Mercer departed from accepted medical care under the civil practice and remedies code.  Dr. Wagner’s complete amended report is attached to this opinion as appendix “A.”

Standard of Review

Although the Barbers ask us to reevaluate the standard of review for expert report challenges, Texas courts and our supreme court, in particular, agree that review of a trial court’s decision on a motion to dismiss under section 74.351 is subject to an abuse of discretion standard.  
See, e.g., Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios
, 46 S.W.3d 873, 875 (Tex. 2001) (applying abuse of discretion standard to predecessor statute); 
Craig v. Dearbonne
, 259 S.W.3d 308, 310 (Tex. App.—Beaumont 2008, no pet.);
 San Jacinto Methodist Hosp. v. Bennett
, 256 S.W.3d 806, 811 (Tex. App.—Houston [14th Dist.] 2008, no pet.); 
Lal v. Harris Methodist Fort Worth
, 230 S.W.3d 468, 471 (Tex. App.—Fort Worth 2007, no pet.).  We have previously declined the opportunity to apply a de novo standard of review to this issue and therefore decline the Barbers’ invitation now.  
Ctr. for Neurological Disorders, P.A. v. George
, 261 S.W.3d 285, 291 (Tex. App.—Fort Worth 2008, pet. denied).  Furthermore, a trial court’s decision on whether a physician is qualified to offer an expert opinion in a health care liability claim is reviewed under an abuse of discretion standard.  
See Mem’l Hermann Healthcare Sys. v. Burrell
, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc
., 701 S.W.2d 238, 241– 42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
. at 242.  A trial court does not abuse its discretion if it commits a mere error in judgment.  
See E.I. du Pont de Nemours & Co. v. Robinson
, 923 S.W.2d 549, 558 (Tex. 1995).

Applicable Law

In a health care liability claim, a claimant must serve on each defendant an expert report that addresses standard of care, liability, and causation no later than the 120th day after the claim is filed.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j).  If an expert report has not been served on a defendant within the 120-day period, then on the motion of the affected defendant, the trial court must dismiss the claim with prejudice and award the defendant reasonable attorney’s fees and costs.  
Id
. § 74.351(b).  A report “has not been served” under the statute when it has been physically served but it is found deficient by the trial court.  
Lewis v. Funderburk
, 253 S.W.3d 204, 207–08 (Tex. 2008).  When no report has been served because the report that was served was found to be deficient, the trial court has discretion to grant one thirty-day extension to allow the claimant the opportunity to cure the deficiency.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

A report is deficient (therefore subjecting a claim to dismissal) when it “does not represent an objective good faith effort to comply with the definition of an expert report” in the statute.  
Id
. § 74.351(
l
).  While the expert report “need not marshal all the plaintiff’s proof,” 
Palacios
, 46 S.W.3d at 878, it must provide a fair summary of the expert’s opinions as to the “applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

To qualify as a good faith effort, the report must “discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit.”  
Palacios
, 46 S.W.3d at 875.  A report does not fulfill this requirement if it merely states the expert’s conclusions or if it omits any of the statutory requirements.  
Id
. at 879.  The information in the report “does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial.”  
Id
.  When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document alone. 
 Id
. at 878; 
see Bowie Mem’l Hosp. v. Wright
, 79 S.W.3d 48, 52 (Tex. 2002).  This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended.  
See Austin Heart, P.A. v. Webb
, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing 
Bowie Mem’l Hosp., 
79 S.W.3d at 53).

An expert report concerning standards of care for physicians “authored by a person who is not qualified to testify . . . cannot constitute an adequate report.”  
Moore v. Gatica
, 269 S.W.3d 134, 140 (Tex. App.—Fort Worth 2008, pet. denied); 
In re Windisch
, 138 S.W.3d 507, 511 (Tex. App.—Amarillo 2004, orig. proceeding);
 see Ehrlich v. Miles
, 144 S.W.3d 620, 624–25 (Tex. App.—Fort Worth 2004, pet. denied).  To be an “expert” on the departure from a physician’s standard of care (therefore qualifying the submission of an expert report), a person must be a physician who

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A), § 74.401(a) (Vernon 2005).  In determining the third element of this standard, courts must consider whether the physician who completed the report (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim, and (2) is actively practicing medicine in rendering medical care services relevant to the claim.  
Id
. § 74.401(c).  In other words,

there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. . . .  [T]he proponent of the testimony has the burden to show that the expert possesses special knowledge as to the very matter on which he proposes to give an opinion.

Ehrlich
, 144 S.W.3d at 625 (quoting 
Broders v. Heise
, 924 S.W.2d 148, 152–53 (Tex. 1996)).  For this reason, the offered report (along with the physician’s curriculum vitae (CV)) must generally demonstrate that the expert has “knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.”  
Id. 
at 625 (quoting 
Roberts v. Williamson
, 111 S.W.3d 113, 121 (Tex. 2003)).

However, “there are certain standards of medical care that apply to multiple schools of practice and any medical doctor.”  
See Blan v. Ali
, 7 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  Therefore, a physician “who is not of the same school of medicine [as the defendant] . . . is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant.”  
Ehrlich
, 144 S.W.3d at 625; 
see also Marling v. Maillard
, 826 S.W.2d 735, 740 (Tex. App.—Houston [14th  Dist.] 1992, no writ).

Analysis

Whether Law of the Case Applies

After the next hearing on the adequacy of Dr. Wagner’s amended report, this time the trial court determined that Dr. Wagner, a board certified anesthesiologist, was 
not
 
qualified
 to give an opinion on Dr. Mercer’s care but that 
all of Dr. Mercer’s other objections to Dr. Wagner’s report were overruled
 and that in all other respects the report had met the requirements of a section 74.351 expert report.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351.  Because the only basis for the trial court’s dismissal of the Barbers’ claim against Dr. Mercer was based on its new determination that Dr. Wagner “fails to meet the qualifications to opine as an expert against Dr. Mercer,” we too will focus on this ground.

Importantly, the trial court’s initial order regarding Dr. Wagner’s first report as to Dr. Mercer specifically overruled the defense objections to Dr. Wagner’s qualifications to opine regarding Dr. Mercer’s alleged negligence.  Therefore, we must first decide the impact, if any, of the trial court’s prior ruling that actually approved Dr. Wagner’s qualifications and found his report lacking only on standard of care, breach, and causation.

Generally, once an issue has been litigated, that issue may not be relitigated.
  See generally Nat’l Union Fire Ins. Co. of Pittsburgh, Pa. v. John Zink Co.
, 972 S.W.2d 839, 845–46 (Tex. App.—Corpus Christi 1998, pet. denied).  And, in this particular case, Dr. Mercer filed an interlocutory appeal to this court challenging the trial court’s denial of his objections to Dr. Wagner’s qualifications and its alleged denial of his motion to dismiss based upon Dr. Wagner’s qualifications.  This court dismissed that appeal in a memorandum opinion for lack of jurisdiction to consider an interlocutory appeal of a trial court’s failure to rule on a dismissal motion based on the inadequacy of an expert report and its grant of an extension of time to cure.  
See Barber v. Barber
, No. 02-07-00353-CV, 2007 WL 4461411, at *1 (Tex. App.—Fort Worth Dec. 20, 2007, no pet.) (mem. op.).  In doing so, we noted that the trial court had not ruled on Dr. Mercer’s first motion to dismiss.  
Id
.  Dr. Mercer had tried to appeal “only the denial of his objections and motion to dismiss based on [Dr. Wagner’s] lack of qualifications to opine against Dr. Mercer.”  
Id.

At the hearing on the sufficiency of the amended report, the Barbers argued that Dr. Mercer had waived his current right to challenge the expert report because this, in essence, gave him two attempts to appeal.  The unique posture of this case, however, is that our court dismissed the first interlocutory appeal for want of jurisdiction.  Thus, there really has been no review of the trial court’s initial overruling of Dr. Mercer’s objection to Dr. Wagner’s qualifications while at the same time sustaining Dr. Mercer’s objections to the report for failure to adequately set forth the standards of care, breach, and causation.  In other words, the Barbers modified their first report to address the defects specifically enumerated by the trial court—those that went to the adequacy of the report regarding standard of care, breach, and causation—as opposed to the qualifications of their expert.  They made virtually no changes to the initial report regarding Dr. Wagner’s qualifications because the trial court had already overruled Dr. Mercer’s objections to Dr. Wagner’s qualifications.  However, the law of the case doctrine is limited to questions of law determined by a court of last resort.  
See generally City of Houston v. Jackson
, 192 S.W.3d 764, 769 (Tex. 2006); 
Briscoe v. Goodmark Corp
., 102 S.W.3d 714, 716 (Tex. 2003); 
Truck Ins. Exch. v. Robertson
, 89 S.W.3d 261, 264 (Tex. App.—Fort Worth 2002, no pet.). Thus, we will consider Dr. Wagner’s qualifications to opine in this appeal.
(footnote: 3)
Qualifications to Opine

“[A] physician ‘who is not of the same school of medicine [as the defendant] is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant.’” 
 Gatica
, 269 S.W.3d at 141 (citing 
Ehrlich,
 144 S.W.3d at 625).  In other words, such a physician may not be practicing in the “exact same field as the defendant physician, but instead must . . . be actively practicing medicine in rendering medical care services relevant to the claim.”  
Kelly v. Rendon
, 255 S.W.3d 665, 674 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  According to the Texas Rules of Evidence, which also provide guidance, we may look to “whether the offering party has established that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court.”  
Gelman v. Cuellar
, 268 S.W.3d 123, 128 (Tex. App.—Corpus Christi 2008, pet. denied) (citing Tex. R. Evid. 702; 
Roberts
, 111 S.W.3d at 121).  Furthermore, the court must ensure that the experts have expertise concerning the actual subject about which they offer opinions.  
Reed v. Granbury Hosp. Corp.
, 117 S.W.3d 404, 410 (Tex. App.—Fort Worth 2003, no pet.).

Dr. Mercer’s specific objections to Dr. Wagner’s qualifications as set forth in his amended report and CV are based upon the allegation that Dr. Wagner is unqualified to testify on the particular subject matter as required by sections 74.401(a) and 74.403(a) of the civil practice and remedies code.  
See 
Tex. Civ. Prac. & Rem. Code Ann. §§ 74.401(a), 74.403(a) (Vernon 2005).

In the trial court, Dr. Mercer objected to the fact that Dr. Wagner is an anesthesiologist as opposed to a general surgeon—as is Dr. Mercer—and simply stated that because Dr. Wagner is an anesthesiologist whereas Dr. Mercer is a board certified general surgeon and the case involved a surgical procedure, the Barbers failed to establish Dr. Wagner’s qualifications with regard to the care provided by Dr. Mercer.  Merely referencing paragraphs in Dr. Wagner’s amended report however, without providing some analysis as to why they are insufficient, is not enough.  
See
 Tex. R. App. P. 33.1(a)(1)(A) (requiring party to object with sufficient specificity to make trial court aware of particular complaint); 
Maris v. Hendricks
, 262 S.W.3d 379, 384–85 (Tex. App.—Fort Worth 2008, pet. denied) (holding that objections to adequacy of timely filed report are subject to preservation rules); 
see also Gatica
, 269 S.W.3d at 141 (reiterating that physician of another specialty may be competent to testify about standard of care if he or she has knowledge of what is usually and customarily done by a practitioner under similar circumstances).  Dr. Mercer did, however, continue with his objections, which he also raises on appeal.

Dr. Mercer challenges Dr. Wagner’s CV, which admittedly does not show that he is a general surgeon but a board certified anesthesiologist, a fact already established.  Dr. Mercer instead complains that Dr. Wagner’s CV fails to show how Dr. Wagner has gained any “knowledge, training, or experience that would qualify him to opine on the standard of care of a general surgeon harvesting a vein.”  While it is true that Dr. Wagner’s CV might not reveal such information when read in isolation, we are allowed, if not instructed, to consider the four corners of the report along with the CV when evaluating the expert’s qualifications to opine on a particular subject.  
Palacios
, 46 S.W.3d at 878; 
Hansen v. Starr
, 123 S.W.3d 13, 20 (Tex. App.—Dallas 2003, pet. denied).  Because we do not view Dr. Wagner’s CV in isolation, this objection alone is an insufficient basis for the trial court’s determination on Dr. Wagner’s qualifications.

While Dr. Mercer then acknowledges that Dr. Wagner’s amended report shows that he has “administered and managed medical anesthesia care and treatment to over 10,000 patients undergoing surgeries in a supine position, and . . . between 300 and 400 patients undergoing cardiac surgery,” Dr. Mercer contends this experience is insufficient because it “does not establish how he could legitimately be qualified by training or experience to opine as to the scope of Dr. Mercer’s duties and responsibilities as a general surgeon harvesting a vein, or what Dr. Mercer should have known as a general surgeon harvesting a vein.”  However, excerpts from Dr. Wagner’s amended report show otherwise.  For example, in paragraph six, Dr. Wagner states, “I am familiar and experienced in . . . proper patient positioning to prevent peripheral neuropathies in the upper . . . extremities of patients . . . including 
cardiac surgical procedures
.”  Dr. Wagner additionally says in paragraph seven,

I have substantial personal knowledge and experience in the 
medical
 
diagnosis, care, and treatment 
of adult patients undergoing general anesthesia for cardiac surgical procedures, and I am 
familiar with the management of such procedures, including the positioning and padding of the patient and the patient’s extremities in the prevention of perioperative peripheral neuropathies
 under circumstances like or similar to Malcolm Barber[‘s]. . . .  I am familiar with the 
management
 of such procedures, including the positioning and padding of the patient. . . .  My 
medical management 
of adult patients undergoing general anesthesia for cardiac surgical procedures, and familiarity with the 
management
 of such procedures, including the positioning and padding of the patient . . . has included approximately 300 to 400 patients.

And in paragraph eight, Dr. Wagner further states,

I also have substantial knowledge of the causal relationship between an anesthesiologist’s [and]
 general
 and traumatic 
surgeon’s
 . . . failures to meet the reasonable, prudent and accepted standards of 
medical [and] health . . . care and supervision 
in the diagnosis, care and treatment of patients undergoing general anesthesia for cardiac surgical procedures, . . . including the positioning and padding of the patient and the patient’s extremities in the prevention of perioperative peripheral neuropathies under circumstances like or similar to Malcolm Barber[‘s] as of 2004. . . .  Furthermore, I have substantial knowledge of the effectiveness or potential effectiveness of such standards of
 medical [and] health . . . care
 for . . . general and traumatic surgeons . . . in the diagnosis, care, and treatment of patients undergoing general anesthesia for cardiac surgical procedures in the positioning and padding of surgical patients’ extremities, and I am familiar with the 
management
 of the positioning and padding of the patient . . . . 

And, finally in paragraph nine, Dr. Wagner says,

I have substantial knowledge of reasonable, prudent, and accepted standards of 
medical, health
, nursing, and physician’s assistant care applicable to anesthesiologists, 
[and] general
 and traumatic 
surgeons
, . . . for the care and positioning and padding of the patient and the patient’s extremities . . . .  My knowledge of such standards of 
medical
, nursing and physician’s assistant care is based upon my above-described education, training and experience, my familiarity with the applicable 
medical
 literature, my familiarity with the applicable standards of 
medical and health 
care . . . that were applicable to all 
general
 and traumatic 
surgeons . . . .

 [Emphasis added.]

There is a repeating theme to Dr. Wagner’s qualifications; he continually ties his education and training not only to his knowledge of anesthesia care during a cardiac procedure, but also to the medical and health standards of care for general surgeons like Dr. Mercer, who perform cardiac procedures that involve positioning and padding of a patient.  He clearly identifies that he has acquired training and experience in studying, learning, and observing the appropriate standards for general surgeons with regard to their obligations for the positioning and padding of their medical patients.  
See
 Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(3).

In this case, it is also important to note that the alleged medical negligence does not relate to a particular failure regarding the cardiac or general surgeons’ performance of the actual operating techniques.  Here, the alleged breach relates specifically to the padding and positioning of the patient and his extremities during the procedure.  The padding and positioning of a patient during surgery is common to surgeries generally, and Dr. Wagner quite clearly and repeatedly makes clear that he has knowledge, training, and experience regarding the medical and surgical management duties of the general surgeon during surgical procedures.
(footnote: 4)
 For all the foregoing reasons, we believe that the trial court’s initial ruling denying Dr. Mercer’s objections to Dr. Wagner’s qualifications was correct.  We therefore conclude that the Barbers’ expert, Dr. Wagner, is qualified to render an opinion under section 74.401(a) and (c), as well as section 74.403, as to a general surgeon’s duty regarding the proper positioning and padding of a cardiac surgical patient.  Tex. Civ. Prac. & Rem. Code §§ 74.401(a), (c), 74.403(a).  We therefore also determine that the trial court abused its discretion in sustaining Dr. Mercer’s objections to the qualifications of the Barbers’ expert upon the filing of their amended report.  We sustain the Barbers’ sole issue and reverse and remand this case to the trial court for further proceedings.

TERRIE LIVINGSTON

JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and MEIER, JJ.

CAYCE, C.J. concurs without opinion.

DELIVERED:  October 15, 2009 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

FOOTNOTES
1:
The trial court dismissed some of the named defendants due to the insufficiency of the report, but the Barbers were given an opportunity to amend their report as to Dr. Mercer and some of the other defendants.

2:
Although it was the 
same expert
 supplying the amended report whom the trial court had previously found qualified, this time the trial court ruled that the expert was 
not 
qualified to render the report and limited its ruling to Dr. Wagner’s lack of qualifications alone.

3:
We note some disparity with this determination: if the trial court had originally determined that Dr. Wagner was both unqualified to opine and that the report was inadequate, the Barbers likely would have modified their explanations of their expert’s qualifications.  Now, however, they have apparently used up their one-time extension, and the trial court has totally changed its mind regarding their expert’s qualifications.  Thus, the Barbers have been denied an opportunity to amend this aspect of their report even once.  
See
 Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

4:
Although Dr. Mercer notes allegations against him that go beyond the positioning and padding of the extremities in a surgical procedure and requests that we affirm the dismissal as to those allegations, it is quite clear that the Barbers’ complaints regarding Dr. Mercer in the appeal relate only to his failure to manage the positioning and padding of a patient’s extremities as shown by their concession in their reply brief.