**UNITED TECHNOLOGIES CORPORATION, Plaintiff–Appellant,**

v.

**CHROMALLOY GAS TURBINE CORPORATION, Defendant–Appellee.**

No. 98–1577.

United States Court of Appeals, Federal Circuit.

Aug. 25, 1999.

Rehearing Denied; Suggestion for Rehearing En Banc Declined.

Donald E. Scott, Bartlit Beck Herman Palenchar & Scott, of Denver, Colorado, argued for plaintiff-appellant. With him on the brief were Rhett R. Dennerline and Jason L. Peltz, Barlit Beck Herman Palenchar & Scott, of Chicago, Illinois. Of counsel on the brief were Donald R. Dunner and Howard A. Kwon, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC.

Howard B. Comet, Weil, Gotshal & Manges, LLP, of New York, New York, argued for defendant-appellee. With him on the brief was David J. Lender. Of counsel on the brief were Michael G. Scheininger and Daniel E. Johnson, McKenna & Cuneo, L.L.P., of Washington, DC.

Before SCHALL and GAJARSA, Circuit Judges, and CUDAHY,* Senior Circuit Judge.

GAJARSA, Circuit Judge.

United Technologies Corporation ("United") appeals the August 15, 1998 decision of United States District Court for the District of Delaware, Docket No. 95–CV–444. United initiated the present action in the district court against Chromalloy Gas Turbine Corporation ("Chromalloy") for patent infringement and breach of contract for non-payment of royalties. In response, Chromalloy filed various counterclaims, including a Third Counterclaim for breach of contract. The district court segregated the issues for a series of separate trials. In December 1997, the district court denied United's motion for summary judgment to bar Chromalloy's Third Counterclaim under the doctrine of res judicata. The district court held a bench trial concerning the Third Counterclaim, ultimately granting specific performance in favor of Chromalloy after finding that United had breached a February 4, 1985 agreement between the parties. Because the district court erred in failing to apply the doctrine of res judicata to bar Chromalloy's Third Counterclaim, following a state law antitrust action against United in a Texas state court, we reverse the district court's res judicata decision and vacate the judgment concerning Chromalloy's Third Counterclaim.

## BACKGROUND

United manufactures gas turbine engines for use in jet aircraft through its Pratt & Whitney ("Pratt") Aircraft division. United licenses other companies to use its technology to repair component parts for these engines. On February 4, 1985, United and Chromalloy entered into an agreement ("the Repair Agreement") in which United agreed to license certain of its proprietary repair technology, including patented processes, to Chromalloy for use in developing repairs for certain engine components. Under the terms of the Repair Agreement, United agreed to test and evaluate samples of each repair process delivered by Chromalloy to help Chromalloy meet regulatory requirements established by the Federal Aviation Administration ("FAA"). Once Chromalloy's repair processes met the relevant requirements, it was to be listed in Pratt's engine manual as a "qualified repair source" for a ten-year period, with optional five-year extensions. Chromalloy was to pay United a royalty for each repair that used United's proprietary information.

Appended to the Repair Agreement was "Exhibit A" that listed the repair processes for engine parts based on various patents licensed to Chromalloy. At the time the Repair Agreement was signed, Exhibit A contained 99 parts relating to one of four engine models: "JT9D–7Q, –59A, –70," "JT9D–7R4 Series," "PW2037," and

---

* The Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

"PW4000 Series." The parts listings are general descriptions, sometimes listing the material from which the part is made, such as "1 Stage Turbine Blade—PWA 1422 Material." The repair processes listed are also general descriptions such as "Strip Coating(s)," "Clean Internal Cavity," or "Restore PWA 270 Coating." Over the course of performance, the list was expanded by mutual agreement to include additional repair processes and newly developed engines. United also approved additional repair processes that were not specifically listed in Exhibit A or its amendments.

Starting in 1992, Chromalloy was investigated by the federal government for alleged defective engine repair, including those Pratt engines covered by the Repair Agreement. Eventually, in 1996, two of Chromalloy's executive vice presidents were convicted of criminal fraud in connection with those repairs. Meanwhile, United continued to develop new engines and new technologies and Chromalloy requested to become an approved repair source for the new engines and related parts. In 1995, the parties entered into negotiations for an agreement that would encompass the new engine repairs. The parties ceased negotiations after United conducted a royalty audit of Chromalloy in 1995 under the Repair Agreement and allegedly discovered that Chromalloy had underpaid royalties and had made unauthorized uses of United's proprietary technology.

On July 11, 1995, United filed the present action in the United States District Court for the District of Delaware alleging patent infringement and breach of contract. Chromalloy, on August 29, 1995, in lieu of an antitrust counterclaim in Delaware, filed an action in Texas state court alleging that United monopolized and attempted to monopolize the engine part repair business in violation of the Texas Free Enterprise and Antitrust Act, the Texas state version of the Sherman Act. Chromalloy sought both damages—actual and statutory treble damages—and permanent injunctive relief to prevent United from engaging in any predatory or exclusionary conduct. United moved to stay the Texas case in favor of the Delaware action, arguing that antitrust claims are generally filed as counterclaims to patent infringement suits if they arise from the same transactions. Chromalloy argued that the state antitrust claim was not a compulsory counterclaim to the Delaware action and different issues were to be litigated in the two cases. The Texas state court denied the motion to stay on September 13, 1995. On August 5, 1996, United filed a motion *in limine* in the Texas action to prevent Chromalloy from arguing any breach of contract claims during the upcoming Texas trial, arguing that the contract issues had not been pleaded. Chromalloy agreed that it was not seeking to have the Texas court or jury adjudicate any breach of contract claims and did not seek any damages based on breach of contract; Chromalloy contended that it was seeking relief for United's alleged anticompetitive behavior. The court granted United's *in limine* motion. It limited the discussion of contract issues between the two parties to the voir dire and to the opening statements of the Texas trial.

On August 16, 1996, Chromalloy filed its Third Amended Complaint in the Texas action alleging, among other things, that United was seeking to destroy the engine repair market by "den[ying] Chromalloy approval for a repair based solely on its arbitrary determination that the market ... was already 'sufficiently served'"; "restricting the availability of categories of drawings and other technical information ... for use in the repair of parts of the development of new repairs ..." ¶ 30; "refusing to timely distribute Internal Engineering Notices ('IEN(s)') and other technical information necessary to perform repairs ..." ¶ 31; "denying approval for new repairs so that Defendant [United] could sell more new spare parts and capture repairs for its own units" ¶ 34; and "imposing or attempting to impose new contracts on ... repair companies when there were applicable existing contracts and when new contracts were more favor-

able to Defendant than Defendant's existing contracts which were then in force . . . ." ¶ 35.

In November 1996, following a three-month trial, a jury found that although United did not engage in actual monopolistic conduct, it had attempted to engage in monopolistic conduct. The jury, however, returned a zero damages award. In post-trial motions, the Texas court denied Chromalloy's request for injunctive and mandatory relief which sought, among other things, to enjoin United from withholding technical information necessary to establish and verify the airworthiness of any proposed repair and to enjoin United from not licensing proprietary technology to Chromalloy. Specifically, Chromalloy sought in the injunction to enjoin United from

> grant[ing] preferential treatment in its repair businesses to United affiliated entities in connection with (i) developing Pratt Approved Repairs; (ii) obtaining and maintaining approvals for Pratt Approved Repairs; (iii) performing Pratt Approved Repairs; (iv) making available and pricing parts, materials and technical information used for Pratt Approved Repairs . . . .

By definition, Pratt Approved Repairs included repairs that required the use of United's proprietary information. Chromalloy also sought to prevent United from "making a true claim about ownership of its proprietary technology" unless it was accompanied by documentation specifying "the reasonable terms upon which United is willing to license such technology." The Texas trial court's ruling was upheld on appeal. See Chromalloy Gas Turbine Corp. v. United Techs. Corp., No. 04–97–00674–CV (Tex.App. Oct.14, 1998).

The patent infringement suit filed by United in Delaware proceeded during the course of the Texas antitrust action. On May 15, 1996, Chromalloy submitted its Third Counterclaim in the Delaware action alleging that United had breached the Repair Agreement by failing to provide Chromalloy with updated technical information, particularly IEN's, to perform authorized repairs to authorized parts and by refusing to approve and assist in developing new repairs for Chromalloy. Initially, Chromalloy sought damages and equitable relief, but eventually Chromalloy withdrew its damages request to avoid a jury trial. Chromalloy decided to limit the relief sought to declaratory relief and specific performance under the Repair Agreement, including provision of technical information to perform authorized repairs, assistance and authorization to develop and perform repairs of United parts, and the mandatory licensing of new technology. Following the judgment in the Texas action, United moved for partial summary judgment in the Delaware case, predicated on res judicata, to bar Chromalloy's Third Counterclaim to the extent it sought relief for repairs that had been or could have been litigated by Chromalloy in Texas. The district court denied United's motion on December 10, 1997, finding that the claims and relief sought differed in the two cases, and the "findings of the Texas court did not require an interpretation of the [Repair Agreement] and did not result in a resolution of the parties' dispute about [the Repair Agreement]." On August 14, 1998, following a bench trial on the issues contained in the Third Counterclaim, the district court interpreted the Repair Agreement and found that United had breached the Repair Agreement by failing to grant repair approvals on the ground that the Agreement did not cover certain engines, and by failing to provide technical data relating to the repair of parts listed in Exhibit A of the Agreement. The court granted Chromalloy specific performance under the Repair Agreement. United now appeals the December 10, 1997 denial of its res judicata motion and the August 14, 1998 final judgment of the district court.

## DISCUSSION

### 1. Standard of Review

Whether, based on the facts of the case, a claim is barred by the doctrine

of res judicata is a question of law that we review *de novo.* *See Faust v. United States,* 101 F.3d 675 (Fed.Cir.1997). Texas law controls the issue of res judicata, as required by the "full faith and credit" statute. *See* 28 U.S.C. § 1738 (1994); *MGA, Inc. v. General Motors Corp..* 827 F.2d 729, 732 (Fed.Cir.1987) ("The full faith and credit statute does not permit federal courts to employ their own rules of res judicata in determining the effects of state judgments. Rather, a federal court is to accept the rules chosen by the state in which the judgment is rendered.").

## 2. Analysis

 In general, res judicata, also known as claim preclusion, "prevents the relitigation of a claim or cause of action that has been fully adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). Related to res judicata is the more narrow doctrine of collateral estoppel, known also as issue preclusion, which "prevents relitigation of particular issues already resolved in a prior suit." *Id.; see also National Union Fire Ins. Co. of Pittsburgh v. John Zink Co.,* 972 S.W.2d 839, 846 (Tex. App.1998) ("Collateral estoppel is narrower than res judicata.... It ... bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in the prior suit, regardless of whether the second suit is based upon the same cause of action.").

United argues that the district court's res judicata ruling contradicts Texas law, which bars subsequent suits on claims that either were or "could have been" raised in a previous action, regardless of any differences in the legal theories presented or the relief requested. United argues that it is the factual basis of the claims that controls whether res judicata bars a claim. United asserts that Chromalloy not only could have litigated, but did actually litigate the same facts in Texas as it later litigated in the Delaware action now on appeal before us. Moreover, United contends that Chro-

malloy sought the same relief in the two actions, just under different names, and argues that the relief identified as an "injunction" sought in the Texas action was ultimately granted as "specific performance" by the Delaware district court, and therefore the Delaware court granted Chromalloy what it had lost in Texas. United further argues that Chromalloy cannot claim that United agreed to let Chromalloy split the cause of action between Texas and Delaware or that United waived its res judicata defense. United contends that it objected to Chromalloy's splitting the cause of action from the outset, but did not oppose Chromalloy's motion to amend its answer in the Delaware action, adding the Third Counterclaim, only as a procedural accommodation. It argues that once it recognized the extent of the factual overlap between the two cases, it raised the res judicata defense. In addition, United contends that Chromalloy itself intended to assert res judicata in the Delaware action based on the outcome of the Texas action.

Chromalloy opposes United's res judicata argument, claiming that it is not reviewable because it stems from a denial of a summary judgment motion and is not from a final judgment entered after trial. Furthermore, Chromalloy contends that United waived its res judicata defense because it did not plead this defense until after the Texas trial claiming that United should have raised the issue in its response to Chromalloy's Third Counterclaim. Chromalloy asserts that United's *in limine* motion in the Texas proceeding, seeking to bar a litigation of any breach of contract claims in Texas, serves as waiver. Finally, Chromalloy maintains that United's res judicata argument is without merit. Chromalloy asserts that the Texas and Delaware actions involved different transactions; the Texas case involved past actions whereas the Delaware litigation involved future conduct. In addition, Chromalloy contends that the overlap between the Delaware and the Texas actions involved only one limited area, namely harm arising

from certain past failures to provide Chromalloy with certain repair approvals; this limited overlap does not warrant an application of res judicata.

A denial of a motion for summary judgment may be appealed, even after a final judgment at trial, if the motion involved a purely legal question and the factual disputes resolved at trial do not affect the resolution of that legal question. *See, e.g., Wolfgang v. Mid–America Motorsports, Inc.,* 111 F.3d 1515, 1521 (10th Cir.1997); *Rekhi v. Wildwood Indus., Inc.,* 61 F.3d 1313, 1318 (7th Cir.1995). Thus, the threshold issue becomes whether United preserved its res judicata defense for appeal after the denial of summary judgment. A party may preserve an issue for appeal by renewing the issue at trial or by including it in memoranda of law or proposed conclusions of law. *See, e.g., United States v. Blakeman,* 997 F.2d 1084, 1092 (5th Cir.1992). From the record below, we find that United renewed the res judicata issue during the Delaware bench trial and in its proposed conclusions of law submitted to the court after the trial. We therefore find that United preserved the issue of res judicata and it is properly before us on appeal. In addition, we find Chromalloy's waiver argument unpersuasive because the record makes apparent that both parties intended to use res judicata in the Delaware action depending on the outcome of the Texas case; this intent was made known to the Delaware district court at the January 31, 1997 hearing.

Under Texas law "[r]es judicata precludes relitigation of claims that have been finally adjudicated, *or that arise out of the same subject matter and that could have been litigated in the prior action.*" *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996) (emphasis added). The proper application of res judicata requires proof of the following: 1) a prior final judgment on the merits by a court of competent jurisdiction; 2) identity of the parties or those in privity with the parties; and 3) a subsequent action based on the same claims as were raised, or could have

been raised, in the prior action. *See id.* The parties do not dispute the existence of the first two elements; it is the third element – the nature of the claims in the two actions and their factual bases – that is disputed.

Texas law takes a "transactional" approach to res judicata, as discussed in the *Restatement (Second) of Judgments* § 24 (1982). *See Barr,* 837 S.W.2d at 631. In such an approach, a subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, "through the exercise of diligence, could have been litigated in a prior suit." *Id.* What constitutes the subject matter of a suit depends on the factual basis of the complaint, and any cause of action that arises out of the same facts should be litigated in the same action. *See id.* at 630; *see also Flores v. Edinburg Consol. Independent School Dist.,* 741 F.2d 773, 777 (5th Cir.1984) (applying Texas law to conclude that " 'a different cause of action' is one that proceeds not only on a sufficiently different legal theory but also on a different factual footing as not to require the trial of facts material to the former suit"). Under the Restatement's transactional approach, a transaction

> is not equivalent to a sequence of events, however; the determination is to be made pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage."

*Barr,* 837 S.W.2d at 631 (quoting *Restatement (Second) of Judgments* § 24(2)).

Based on the record before us, we find that there is a sufficient factual overlap between the Texas antitrust action and the Third Counterclaim in the Delaware action that res judicata applies. In both actions the parties presented evidence concerning and made arguments relating to the issues of whether United had improp-

erly withheld proprietary technical information from Chromalloy concerning repairs allegedly covered by the Repair Agreement, whether United had improperly withheld assistance and authorization to Chromalloy for making certain repairs, and whether United was required to license certain technology to Chromalloy. The scope of the Repair Agreement, and whether it was meant to cover several of the same new engine models litigated in the Delaware case, was presented during the course of the Texas litigation. The Texas jury, however, was never asked to make a determination on the scope and meaning of the Agreement because Chromalloy never amended its complaint to include a breach of contract claim in the broader antitrust action. Because the validity and the coerciveness of United agreements with repair facilities was at issue in the Texas case, Chromalloy could have brought the breach of contract claim in the Texas proceeding, but for obvious tactical reasons did not.

 We also find Chromalloy's argument that res judicata does not bar the Delaware litigation because the Texas case concerned United's past actions and the Delaware case involved only future conduct to be unpersuasive. "When a defendant is accused of successively but nearly simultaneous acts, or *acts which though occurring over a period of time were substantially of the same sort and similarly motivated,* fairness to the defendant as well as the public convenience may require that they be dealt with in the same action." *Restatement (Second) of Judgments,* § 24, cmt. d (emphasis added). In this case, a large fraction of the Texas trial concerned United's alleged failure to approve repairs for and license proprietary information to "Independent Repair Vendors," such as Chromalloy. Chromalloy in fact sought injunctive and mandatory relief against United in the Texas action. Chromalloy's Third Counterclaim trial in Delaware concerned United's alleged

breach of the Repair Agreement by failing to approve certain repairs and failing to provide Chromalloy with specific proprietary information. Chromalloy's allegations, upon which it premised its claims in the two cases were clearly "of the same sort and similarly motivated," if not identical, although they were presented to establish two different causes of action. In one case they were used to establish United's alleged anticompetitive conduct, pursuant to Texas law, while in the other they were used to establish a breach of contract claim, pursuant to Connecticut law.[1]

Finally, we find that the relief sought by Chromalloy in both actions is intertwined with the factual bases underlying the Delaware breach of contract counterclaim and the Texas state antitrust claim. The wording of Chromalloy's proposed injunction in the Texas litigation would have required United to grant approval to Chromalloy for new repairs to new engines that Chromalloy was seeking to add to the Repair Agreement. It also would have mandated United to provide Chromalloy with the necessary technical information to perform and develop these new repairs. Moreover, the injunction contained a provision that would not have allowed United to make claims to ownership of its proprietary information unless United also provided terms under which it was willing to license such information. Chromalloy was effectively demanding a mandatory licensing arrangement. This is the same relief Chromalloy sought, and was ultimately granted, in the judgment resulting from the trial of the Third Counterclaim in the Delaware action, only rephrased as "specific performance" rather than an injunction. Both the "injunction" sought in Texas and the "specific performance" granted in Delaware are prospective, ongoing equitable relief that cover United technologies developed since the Repair Agreement was signed.

Chromalloy seeks to distinguish the two claims by positing its argument on past

---

1. Connecticut law applied to the contract due to the fact that the parties had selected Connecticut state law to apply to the Repair Agreement.

actions versus future conduct. But this fails to convince us because Chromalloy elected to pursue its claims and seek nearly identical injunctive and mandatory relief in two distinct forums when it should have elected one or the other. The relief sought in both cases was meant to regulate United's future conduct with respect to repair approvals and the licensing of proprietary information. Because Chromalloy sought very similar relief in both the Texas and the Delaware actions based upon the same or similar conduct, Chromalloy cannot now argue that it could not have brought the breach of contract claim concerning the Repair Agreement as part of the Texas action.

## CONCLUSION

Because the district court erred in holding that res judicata does not apply to bar Chromalloy's Third Counterclaim in the Delaware district action, we *REVERSE* the court's denial of United's motion for partial summary judgment barring Chromalloy from litigating its Third Counterclaim in Delaware and *VACATE* the court's decision concerning Chromalloy's Third Counterclaim.

## COSTS

Each party to bear its own costs.