**UNITED TECHNOLOGIES CORPORATION,**
Plaintiff,

v.

**CHROMALLOY GAS TURBINE CORPORATION,**
Defendant.

No. Civ.A. 95–444–RRM.

United States District Court,
D. Delaware.

June 29, 2000.

Richard D. Kirk, Morris, James, Hitchens & Williams LLP, Wilmington, Delaware, Donald E. Scott, Bartlit, Beck, Herman, Palenchar & Scott, Denver, Colorado, Jason L. Peltz, Andrew L. Goldman, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, Illinois, for plaintiff.

William J. Wade, John T. Dorsey, Jeffrey L. Moyer, Richards, Layton & Finger, Wilmington, Delaware, Howard B. Comet, David Lender, Weil, Gotshal & Manges LLP, New York, NY, Michael G. Scheininger, Daniel E. Johnson, McKenna & Cuneo, Washington, DC, for defendant.

## OPINION

McKELVIE, District Judge.

This is a commercial dispute. Plaintiff United Technologies Corporation manufactures gas turbine engines for commercial aircraft. Defendant Chromalloy Gas Turbine Corporation repairs engines manufactured by United. In 1975, United began licensing its patented technology to Chromalloy for use in repairing engines manufactured by United.

On July 11, 1995, United filed a complaint against Chromalloy in this court for breach of contract, patent infringement, and unfair competition and trade practices. On August 29, 1995, before answering the complaint, Chromalloy filed an action against United in Texas state court, alleging that United violated Texas antitrust law. The next day, Chromalloy filed an answer and counterclaim in this court, in which it denied United's allegation of infringement, asserted affirmative defenses of invalidity and unenforceability, and sought a declaratory judgment of invalidi-

ty, unenforceability and non-infringement. Chromalloy subsequently amended its pleading in this court to assert two additional counterclaims for breach of contract and one for recovery of royalty overpayments. The breach of contract claims in the third and fourth counterclaims are the subject of this opinion.[1]

In November 1996, following a three-month trial, a Texas jury found that United had attempted to engage in monopolistic conduct in violation of Texas antitrust law. However, the Texas jury found that Chromalloy was not entitled to damages. On May 19, 1997, the Texas court denied Chromalloy's post-trial motion for injunctive and declaratory relief.

On November 3, 1997, United moved for summary judgment in this court, alleging that Chromalloy's third and fourth counterclaims for breach of a 1985 Repair Process Agreement and a 1988 Ceramic Coating Agreement were barred by claim preclusion following the Texas antitrust action. On December 10, 1997, the court denied United's motion for summary judgment, finding that the claims and relief sought differed in the two cases.

In December 1997, the court held a seven-day bench trial on Chromalloy's third counterclaim that United breached the Repair Process Agreement by failing to grant repair approvals and failing to provide technical data relating to the repairs. On August 14, 1998, the court issued its opinion on the third counterclaim, finding that United had breached the Repair Agreement and ordering United to perform its obligations under the agreement.

In July 1998, the court held a five-day bench trial on Chromalloy's fourth counterclaim that United breached the Ceramic Coating Agreement by changing a product designation to avoid its obligations under the agreement. The court has not issued its decision on the fourth counterclaim.

On September 14, 1998, the court entered final judgment on the third counterclaim pursuant to Fed.R.Civ.P. 54(b), finding that its August 14, 1998 order was final and immediately appealable insofar as it ordered specific performance. On the same day, United filed its notice of appeal with the U.S. Court of Appeals for the Federal Circuit. Both the Rule 54(b) judgment and the notice of appeal were limited to the repair approval portion of the third counterclaim.[2] On August 25, 1999, the Federal Circuit reversed this court's denial of United's motion for summary judgment and found that claim preclusion barred Chromalloy from litigating its third counterclaim in Delaware. *United ed Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1346 (Fed.Cir. 1999).

Following the decision by the Federal Circuit, the parties filed three motions. First, United moves for post-appeal restitution in the form of a court order directing Chromalloy to return the proprietary information that United provided pursuant to the court's August 14, 1998 order. Second, United renews its motion for a summary judgment that the fourth counterclaim and a part of the third counterclaim that was not subject to the Federal Circuit's decision are barred by claim preclusion. Third, Chromalloy moves for findings of fact to determine which of Chromalloy's repair approval claims in the third counterclaim are barred by claim preclusion following the Federal Circuit's decision.

This is the court's decision on the motions.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the record of the proceedings in this mat-

---

**1.** The other issues in this case, including the allegations of patent infringement, patent invalidity, and unfair competition and trade practices have been resolved through settlement and summary judgment.

**2.** Excluded from the appeal were portions of the third counterclaim related to the "most favored nations" clause of the 1985 Repair Process Agreement.

ter and from the affidavits, documents and deposition transcripts submitted by the parties.

### A. The Parties

#### 1. Plaintiff United Technologies Corporation

United is a Delaware corporation with its principal place of business in East Hartford, Connecticut. Through its Pratt & Whitney division, United manufactures gas turbine engines for commercial aircraft. United owns U.S.Patent No. 4,008,-844, which is directed to a method of repairing surface defects using metallic filler material. United also owns U.S.Patent No. 4,585,481 and Reissue No. 32,121, which are directed to overlay coatings for superalloys.

#### 2. Defendant Chromalloy Gas Turbine Corporation

Chromalloy is a Delaware corporation with its principal place of business in Orangeburg, New York. Through its Chromalloy New York division, Chromalloy repairs gas turbine engines manufactured by United. Chromalloy New York was formerly known as Chromalloy Research and Technology ("CRT").

### B. Gas Turbine Engines

Gas turbine engines generate power by mixing compressed air with jet fuel, burning the resulting air-fuel mixture and expelling the burned mixture as a high temperature, high pressure gas. A gas turbine engine has several different sections, one of which is known as the high pressure turbine ("HPT") section. The HPT section consists of two sets of "blades" and "vanes" arranged in rings or airfoils. Vanes are curved surfaces of metal that are fixed in place, and direct airflow through the engine. The airflow turns the rings of blades, which then drive other portions of the engine. Blades and vanes in the first airfoil are referred to as "first stage," and those in the second airfoil are referred to as "second stage."

Turbine blades are often exposed to temperatures near the melting point of the metal alloys from which the blades are manufactured. As a result, turbine blades and other parts in the HPT section tend to deteriorate quickly. In order to extend the life-span of these parts, manufacturers apply a thermal barrier coating to engine parts in the HPT section. This multi-layer coating generally includes a corrosion resistant metallic bond coat and a ceramic top coat.

Any repair of an engine part in the HPT section must comply with regulations established by the Federal Aviation Administration ("FAA"). According to FAA regulations, certain repairs must be conducted using "approved data." The FAA appoints "designated engineering representatives" ("DERs") to review and approve engineering data, to determine whether the data meet the applicable FAA regulations. Both Chromalloy and United have employees who are also DERs.

Chromalloy specializes in repairing engine parts in the HPT section. Generally, these repairs involve stripping off the old thermal barrier coating, welding portions of the blades or other engine parts and applying a new thermal barrier coating. In addition, Chromalloy works to develop new repair methods for parts in the HPT section.

### C. United–Chromalloy Licensing Agreements

In order to provide its customers with repair and refurbishment services, United has licensed much of its proprietary technology to various companies including Chromalloy. Two of the United–Chromalloy licensing agreements are relevant to the present dispute: the 1985 Repair Process Agreement and the 1988 Ceramic Coating Agreement.

#### 1. 1985 Repair Process Agreement

On February 5, 1985, Chromalloy and United entered into the Repair Process Agreement. The agreement authorizes Chromalloy to use United's proprietary technology, including its patented process-

es, to develop repair methods and perform repairs on certain parts in the HPT section of United's engines. As Chromalloy develops new repair methods, United agrees to test the repair methods. If a method meets United's technical requirements, United approves the repair and lists Chromalloy in its engine manuals as a "qualified repair source."

The Repair Process Agreement also contains a "most favored nations" ("MFN") clause which provides:

> In the event that United should hereafter, but during the life of this Agreement, enter into an agreement with another company (other than with a subsidiary, affiliate or associate company of United, or the United States Government) concerning Repair Processes included in Exhibit A hereto on terms and conditions more favorably than those contained herein, United will notify CRT in writing of the existence of an agreement containing such more favorable terms and conditions and CRT shall within (90) days from the receipt of such notice, have the right to accept the more favorable terms and conditions, provided CRT is able to fulfill all other terms and conditions of such other agreement.

Under the agreement, Chromalloy agrees to pay a royalty to United for each engine part that Chromalloy repairs. The royalty payments are based upon all operations performed on a part during a repair cycle.

### 2. 1988 Ceramic Coating Agreement

On October 31, 1988, Chromalloy and United entered into the Ceramic Coating Agreement. The agreement licenses Chromalloy to use United's patented technology to apply a ceramic coating designated "PWA 266" to engine parts that Chromalloy sells to United or repairs for United's customers. According to paragraph 13.1 of the agreement, any improvements made by Chromalloy to the ceramic coating become the property of Chromalloy. In addition, the agreement states that United shall provide Chromalloy with any improvements to the PWA 266 coating

that are developed by United. Paragraph 13.2 reads as follows:

> During the term of this Agreement, United shall provide to Chromalloy any improvements to United's Technology that are developed by United. The terms and conditions applicable to United's Technology as set forth in this Agreement shall also apply to any improvements to United's Technology.

Under the agreement, Chromalloy agrees to pay United a 15% royalty whenever it applies the PWA 266 coating to engine parts originally manufactured by United.

### D. Nature of the Dispute

In 1992, the FAA investigated Chromalloy for allegedly making defective engine repairs. Four years later, two of Chromalloy's executive vice presidents were convicted of criminal fraud in connection with those repairs. During this time frame, United and Chromalloy were negotiating a new licensing agreement. In 1995, United ended the negotiations after a royalty audit of Chromalloy allegedly revealed that Chromalloy under-paid royalties and made unauthorized uses of United's proprietary technology.

### 1. The Delaware and Texas Lawsuits

On July 11, 1995, United commenced this action against Chromalloy for breach of contract, patent infringement, and unfair competition and trade practices. On August 29, 1995, before answering the complaint, Chromalloy filed its antitrust action in Texas state court. The Delaware action and the Texas antitrust action proceeded simultaneously.

On October 2, 1995, United moved to stay the Texas case pending the outcome of this action, arguing that antitrust claims are generally filed as counterclaims to patent infringement suits when they arise from the same transaction. Chromalloy opposed the motion, arguing that the state antitrust claim was not a compulsory counterclaim to the Delaware action because the two cases involved different issues.

On October 13, 1995, the Texas state court denied the motion to stay.

On June 25, 1996, Chromalloy amended its pleading in this court to assert additional counterclaims for breach of contract. In its third counterclaim, Chromalloy alleges that United breached the Repair Process Agreement by failing to grant repair approvals and failing to provide technical data relating to the repairs. As part of the third counterclaim, Chromalloy also alleges that United breached the MFN clause of the agreement by failing to notify Chromalloy of more favorable contracts with other companies. In its fourth counterclaim, Chromalloy alleges that United breached the Ceramic Coating Agreement by changing its PWA 266–5 product designation to avoid its obligations under the agreement.

On August 5, 1996, United filed a motion in limine in the Texas action to prevent Chromalloy from arguing its breach of contract claims during the Texas antitrust trial. Chromalloy agreed that it was not seeking to have the Texas court adjudicate its breach of contract claims which it had already asserted in this action. The court granted United's motion in limine, which under Texas rules meant that Chromalloy could not argue the breach of contract claims during the opening statement without the court's permission.

### 2. The Texas Trial

On August 16, 1996, Chromalloy filed its third amended petition in the Texas action alleging that United violated Texas antitrust law by denying repair approvals and refusing to distribute technical information necessary to perform repairs. In paragraph 32 of the petition, Chromalloy alleges that United made minor changes to part designs or part numbers in order to require repair vendors to seek re-approval to perform the repairs. In paragraph 35 of the petition, Chromalloy asserts that:

Defendant has further exercised and maintained its monopoly power by imposing or attempting to impose new contracts on the airlines and repair companies when there were applicable existing contracts and when the new contracts were more favorable to Defendant than Defendant's existing contracts which were then in force in order to increase the barriers and costs associated with performing and developing new repairs.

From August through November 1996, the Texas court held a three-month jury trial on these and other allegations raised by the parties in the antitrust action.

During the Texas antitrust trial, Chromalloy presented evidence to show that United denied repair approvals and refused to distribute technical information necessary to perform the repairs. Chromalloy introduced the 1985 Repair Process Agreement into evidence in the Texas trial. Chromalloy argued not only that United's alleged refusal to grant repair approvals was unlawful under Texas antitrust law, but also that such refusal breached the terms of the Repair Process Agreement.

In addition, Chromalloy presented evidence in the antitrust trial to show that United entered into exclusive agreements with other repair companies. One such agreement, a 1985 Japan Air Lines ("JAL") Agreement was produced during the Texas action in response to Chromalloy's discovery requests. Michael Contratto, a Chromalloy employee who worked at United for 13 years before switching to Chromalloy in 1993, and Dr. Ed Crow, United's Vice President of Engineering, testified about another exclusive agreement between United and Howmet Corporation (the "Howmet Agreement"). Chromalloy introduced the Howmet Agreement into evidence and Crow testified that the agreement granted Howmet an exclusive license regarding United's V2500 A5/D5 engine.

Chromalloy also presented evidence in the Texas trial to show that United changed the designation of the PWA 266–5 coating to PWA 272 in violation of the 1988 Ceramic Coating Agreement. Chromalloy introduced the Ceramic Coating Agreement into evidence. On several occasions,

Chromalloy examined witnesses about the alleged re-designation of PWA 266–5 to PWA 272. For example, Crow testified about an email from a United engineer which stated, "[w]e have tricked the system into allowing us to continue to coat PWA 266–5 even though the PWA 272 specification (for legal reasons) has superseded PWA 266–5." During closing argument, counsel for Chromalloy stated:

> This lock out is a deliberate plan to manipulate their power over the specifications for repairs and, by the way, in violation of the 1988 agreement, because they tricked the system to change 266–5 that is covered by our agreement into something [called] 272.

On November 26, 1996, the Texas jury returned its verdict. The jury found that although United did not engage in actual monopolistic conduct, it had attempted to engage in monopolistic conduct in violation of Texas antitrust law. However, the jury found that Chromalloy was not entitled to any damages for the violation. In its posttrial motion, Chromalloy sought injunctive and declaratory relief to require United to grant repair approvals to Chromalloy and to enjoin United from withholding technical information necessary to make the repairs. On May 19, 1997, the Texas court denied Chromalloy's motion for injunctive and declaratory relief.

### 3. United's Claim Preclusion Argument

On September 3, 1997, United moved for summary judgment in this court that Chromalloy's third and fourth counterclaims for breach of the Repair Process Agreement and the Ceramic Coating Agreement were barred by claim preclusion following the Texas action.[3] In support of its motion, United argued that the events that were the subject of Chromalloy's third and fourth counterclaims were identical to the events underlying the Texas antitrust action.

The court denied United's motion on December 10, 1997, finding that the claims

and relief sought in Delaware for breach of contract did not overlap with the claims and relief sought in Texas for violations of state antitrust law. In its opinion, the court explained that the "findings of the Texas court did not require interpretation of the Chromalloy–United contracts, and did not result in a resolution of the parties' dispute about these contracts." As a result, the court found that Chromalloy's breach of contract counterclaims were not barred by claim preclusion.

### 4. The Delaware Trials

In December 1997, the court held a seven-day bench trial on Chromalloy's third counterclaim that United breached the Repair Process Agreement by failing to grant repair approvals and refusing to provide technical data relating to the repairs. Chromalloy presented evidence that the parties intended the Repair Process Agreement to be a flexible contract under which United granted Chromalloy a broad license to repair parts from the HPT sections of its engines.

Chromalloy also presented evidence to show that the JAL Agreement and the Howmet Agreement contained more favorable terms and conditions than those in Chromalloy's Repair Process Agreement. Chromalloy introduced the agreements into evidence at the bench trial. Chromalloy argued that United breached the MFN clause of the Repair Process Agreement by failing to notify Chromalloy of the more favorable terms contained in those agreements.

On August 14, 1998, the court issued its opinion on the third counterclaim, finding that United had breached the Repair Process Agreement, and ordering United to perform its obligations under the agreement. The court also found that United violated the MFN clause of the Repair Process Agreement by failing to notify Chromalloy about the JAL and Howmet Agreements. Because the court was un-

---

3. On March 5, 1997, Chromalloy and United signed a stipulation allowing each party to amend their pleadings in this case to assert the defense of claim preclusion following the outcome of the Texas action.

able to determine the appropriate relief to remedy United's breach of the MFN clause, the court did not resolve the damages issue in its opinion.

In July 1998, the court held a five-day bench trial on Chromalloy's fourth counterclaim that United breached the Ceramic Coating Agreement by changing its product designation to avoid its obligations under the agreement. The central dispute in the trial was whether the Ceramic Coating Agreement was intended to cover the technology involved in the PWA 272 coating.

As it had done in the earlier bench trial on the Repair Process Agreement, Chromalloy presented evidence to show that the parties intended the Ceramic Coating Agreement to be a flexible contract under which United licensed the ceramic coatings used on its engines. In addition, Chromalloy examined witnesses about the alleged re-designation of PWA 266–5 to PWA 272. Chromalloy introduced into evidence the same email from the Texas trial in which a United engineer wrote, "[w]e have tricked the system into allowing us to continue to coat PWA 266–5 even though the PWA 272 specification (for legal reasons) has superseded PWA 266–5." Chromalloy argued that paragraph 13.2 of the agreement required United to license the PWA 272 coating to Chromalloy because the technology was an improvement on the PWA 266 coating.

On September 14, 1998, the court entered final judgment on the third counterclaim pursuant to Fed.R.Civ.P. 54(b), finding that its August 14, 1998 order was final and immediately appealable insofar as it ordered specific performance.[4] On the same day, United filed its notice of appeal with the Federal Circuit. Both the Rule 54(b) judgment and the notice of appeal were limited to the repair approval portion of the third counterclaim. Excluded from

the appeal were portions of the third counterclaim related to the MFN clause of the Repair Process Agreement. The court has not issued its decision on the fourth counterclaim.

### 5. *The Federal Circuit's Decision*

On August 25, 1999, the Federal Circuit reversed this court's denial of United's motion for summary judgment and found that claim preclusion barred Chromalloy from litigating its third counterclaim in Delaware. In its opinion, the Federal Circuit stated that the allegations upon which Chromalloy premised its claims in the two cases were "clearly 'of the same sort and similarly motivated,' if not identical, although they were presented to establish two different causes of action." The Federal Circuit held that because the validity and coerciveness of the Repair Process Agreement was at issue in the Texas case, Chromalloy should have brought the breach of contract claim in the Texas proceeding.

The Federal Circuit also vacated the court's August 14, 1998 order directing United to perform its obligations under the Repair Process Agreement. The Federal Circuit found that the injunctive relief obtained by Chromalloy in the Delaware action was the same relief that the Texas court had refused to grant Chromalloy. "Both the 'injunction' sought in Texas and the 'specific performance' granted in Delaware are prospective, ongoing equitable relief that cover United technologies developed since the Repair Agreement was signed." Because Chromalloy sought similar relief in both actions, the Federal Circuit held that Chromalloy should have brought the breach of contract claim as part of the Texas action.

---

4. Fed.R.Civ.P. 54(b) provides in pertinent part:

(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when

multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

### 6. Pending Motions

Following the Federal Circuit's decision, United and Chromalloy filed three motions that are the subject of this opinion.

On November 22, 1999, United moved for post-appeal restitution in the form of a court order directing Chromalloy to return United's proprietary information. United contends that it provided the information to Chromalloy pursuant to the court's August 14, 1998 order. In light of the Federal Circuit's decision, United argues that the court should order Chromalloy to return the proprietary information.

On December 3, 1999, United renewed its motion for a summary judgment that the fourth counterclaim and the MFN portion of the third counterclaim that was not subject to the Federal Circuit's decision are barred by claim preclusion. United argues that Chromalloy is precluded from litigating its breach of contract claims in Delaware because the claims were raised or could have been raised in the Texas trial.

On February 17, 2000, Chromalloy moved for findings of fact to determine which of Chromalloy's repair approval claims in the third counterclaim are barred by claim preclusion. Chromalloy argues that the Federal Circuit's decision does not bar any repair approval claims in the third counterclaim that accrued after the Texas antitrust case began.

## II. DISCUSSION

United and Chromalloy disagree over the effect of the Federal Circuit's decision on the repair approval claims in the third counterclaim. Therefore, the court will begin its discussion by addressing Chromalloy's motion for findings of fact on the repair approval claims.

### A. Chromalloy's Motion for Findings of Fact on the Repair Approval Claims

Chromalloy argues that this court should schedule a bench trial to determine which of Chromalloy's repair approval claims in the third counterclaim are barred by claim preclusion following the Federal Circuit's decision. Chromalloy argues that many of the repair approval claims that were tried by this court in December 1997 accrued after the Texas case began. According to Chromalloy, claim preclusion does not bar repair approval claims that accrued after the Texas case began because the claims could not have been raised in the prior state action.

United counters that the Federal Circuit's decision resolves the repair approval claims of the third counterclaim. According to United, after this court entered final judgment on the repair approval claims pursuant to Rule 54(b), the Federal Circuit had jurisdiction over the entire repair approval dispute. United argues that the Federal Circuit considered Chromalloy's future repair approval claims when it vacated the August 14, 1998 order granting Chromalloy specific performance. Because the Federal Circuit did not remand the case, United argues that the repair approval portion of the third counterclaim is finished.

The resolution of this issue turns on whether the Federal Circuit's mandate left open further adjudication of the repair approval claims in the third counterclaim. In *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed.Cir.1999), the Federal Circuit stated that "[u]nless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." 166 F.3d at 1383; *see also* Fed. Cir. IOP 9, ¶ 10 (stating that "the court will remand only when there is something more for the trial court or agency to do").

▮ In its opinion concerning the repair approval claims, the Federal Circuit did not remand the case. The Federal Circuit reversed the court's December 10, 1997 denial of United's motion for summary judgment and vacated the court's August 14, 1998 decision on the third counterclaim. 166 F.3d 1379. Therefore, this court lacks jurisdiction to adjudicate any issues that are within the scope of the appeal. *See*

*Engel,* 166 F.3d at 1382 (finding that, absent remand, all issues within the scope of the appeal are precluded from further consideration by the district court).

The scope of the appeal is determined by examining the content of the final judgment from which the appeal was taken. *Id.* In this case, the court entered a final judgment on September 14, 1998 on the repair approval portion of the third counterclaim and the corresponding sections of the court's August 14, 1998 opinion and order. The judgment expressly covered paragraphs 40, 41, 42, 43(a), 43(b), 46(a), 46(b) and 46(e) of the third counterclaim. The MFN claim, which is discussed in paragraphs 43(c) and 46(c), was the only portion of the counterclaim that was excluded from the judgment.[5]

In paragraph 46 of the third counterclaim, Chromalloy sought specific performance of the Repair Process Agreement with respect to past and future repairs. Paragraph 46 provides in pertinent part,

> 46. Chromalloy is entitled to specific performance under the Repair Agreement: (a) for timely provision of updated specifications and technical information, particularly Internal Engineering Notices, to perform authorized repairs to authorized parts; (b) for assistance and authorization to develop and/or perform repairs to United parts that it has the ability and right to repair in accordance with the Agreements, as confirmed by, inter alia, parties' prior course of performance....

Chromalloy argues that claim preclusion does not bar the repair approval claims that accrued after the Texas case began because those claims could not have been raised in the prior state action. The Federal Circuit, however, specifically rejected Chromalloy's argument when it concluded that the repair approval portion of the third counterclaim was barred by claim preclusion. The Federal Circuit stated:

Both the "injunction" sought in Texas and the "specific performance" granted in Delaware are prospective, ongoing equitable relief that cover United technologies developed since the Repair Agreement was signed. Chromalloy seeks to distinguish the two claims by positing its argument on past actions versus future conduct. But this fails to convince us because Chromalloy elected to pursue its claims and seek nearly identical injunctive and mandatory relief in two distinct forums when it should have elected one or the other. The relief sought in both cases was meant to regulate United's future conduct with respect to repair approvals and the licensing of proprietary information.

Thus, the repair approval portion of the third counterclaim, including Chromalloy's request for specific performance regarding United's future conduct, fell within the scope of the appeal. The Federal Circuit did not remand the case to this court for further consideration. Therefore, the court lacks jurisdiction to further adjudicate Chromalloy's repair approval claims. *Engel,* 166 F.3d at 1382. Accordingly, the court will deny Chromalloy's motion for findings of fact regarding the repair approval claims.

### B. United's Renewed Motion for Summary Judgment on the Ceramic Coating Claim and the MFN Claim

In light of the Federal Circuit's decision that the repair approval claims in the third counterclaim are barred by claim preclusion, United renews its motion for summary judgment that the ceramic coating claim in the fourth counterclaim and the MFN portion of the third counterclaim are also barred by claim preclusion. United argues that the breach of contract claims arise out of the same facts as the Texas antitrust claims. Because Chromalloy could have asserted the claims in the Texas action but did not, United argues that

---

5. Paragraphs 43(d) and 46(d) were Chromalloy's right of first refusal claims which it abandoned. Paragraphs 44 and 45 were Chromalloy's damages allegations, which only concerned its MFN claim, since Chromalloy abandoned its damages claim with respect to the repair approval claims.

Chromalloy is precluded from asserting the claims in this court.

Chromalloy counters with three arguments. First, Chromalloy contends that United waived its claim preclusion defense because it failed to assert the defense in this court until after the Texas trial concluded. Second, Chromalloy argues that United's motion for summary judgment is untimely because the court has already presided over bench trials of the ceramic coating claim and the MFN claim. Third, Chromalloy argues that the ceramic coating claim and the MFN claim are not barred by claim preclusion because the claims arise from different facts than the antitrust claim that was at issue in Texas.

### 1. Did United Waive Its Claim Preclusion Defense?

■ Chromalloy argues that United waived its claim preclusion defense because it failed to assert the defense until after the Texas trial concluded. On January 31, 1997, almost five months before the Texas court entered a final judgment, counsel for Chromalloy informed this court that United and Chromalloy planned to amend their pleadings in this court to assert claim preclusion based on the outcome of the Texas case. On March 5, 1997, Chromalloy and United signed a stipulation allowing each party to amend their pleadings to assert the defense. Therefore, the court finds that United did not waive its claim preclusion defense.

### 2. Is United Motion for Summary Judgment Untimely?

Chromalloy contends that United's renewed motion for summary judgment should be denied as untimely because the court presided over trials of the MFN claim and the fourth counterclaim. Although Fed.R.Civ.P. 56 states that a party may move for summary judgment at any time, "it is the rare case in which summary judgment should be granted on a motion made after the trial begins." *Utility Control Corp. v. Prince William Constr. Co.,* 558 F.2d 716, 719 (4th Cir.1977) (citing Fed.R.Civ.P. 56).[6]

■ Even if a motion for summary judgment could be considered post trial, the issues are more properly considered as a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *See Smith v. Insurance Co. of North Amer.,* 213 F.Supp. 675, 701 (M.D.Tenn.1962), *rev'd on other grounds, Trice v. Commercial Union Assurance Co.,* 334 F.2d 673 (6th Cir.1964). Rule 50 provides the legal standard for judgment as a matter of law in jury trials. Because the claims at issue in this case were tried without a jury, the court will treat United's motion for summary judgment as a motion for judgment as a matter of law under Fed.R.Civ.P. 52(c).

Under Rule 52(c), the court has discretion to enter judgment on any issue after hearing the evidence. The rule provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim ... that cannot under the controlling law be maintained...." Fed. R.Civ.P. 52(c).[7] The rule does not require

---

6. Fed.R.Civ.P. 56 provides in pertinent part, A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

7. Fed.R.Civ.P. 52(c) provides:

(c) Judgment on Partial Findings. If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact

the court to consider the evidence in the light most favorable to the nonmoving party. *See Madison v. Frank*, 966 F.2d 344, 345 (8th Cir.1992); 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2573.1, at 497 (2d ed.1995). Rather, the court weighs the evidence and assesses the credibility of witnesses to determine whether or not the plaintiff has demonstrated a factual and legal right to relief by a preponderance of the evidence. *See Rego v. ARC Water Treatment Co. of PA.*, 181 F.3d 396, 399 (3d Cir.1999) (holding that the district court can resolve disputed factual questions under Rule 52(c)); 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2573.1.

### 3. *Does Claim Preclusion Bar the Ceramic Coating Claim and the MFN Claim?*

■ United argues that the Federal Circuit's decision is the law of the case. The Federal Circuit held under Texas law that "any cause of action that arises out of the same facts should be litigated in the same action." *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed.Cir.1999). United contends that the ceramic coating claim in the fourth counterclaim and the MFN portion of the third counterclaim arise from the same facts as the Texas antitrust claim. Therefore, United argues that the claims are barred by claim preclusion.

Chromalloy counters that the Federal Circuit's decision does not bar the ceramic coating claim and the MFN claim because the claims arise from different facts than the antitrust claim that was at issue in Texas. Even if there are factual similarities between the two actions, Chromalloy contends that claim preclusion does not apply because the parties stipulated in a motion in limine that they would not litigate the breach of contract claims in Texas. Furthermore, Chromalloy argues that it should not be precluded from asserting the claims in this court because it was not practicable to try the breach of contract claims in Texas.

and conclusions of law as required by sub-

### a. *Do the breach of contract claims arise from the same facts as the Texas antitrust claim?*

In its decision, the Federal Circuit held that Chromalloy was barred from relitigating the repair approval claims of the third counterclaim. *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1346 (Fed.Cir.1999). The Federal Circuit examined the facts that were introduced in the antitrust action in Texas and the facts that were introduced in the repair approval case in Delaware. The Federal Circuit found a sufficient factual overlap between the two actions to apply claim preclusion. *Id.* at 1344. "Chromalloy's allegations, upon which it premised its claims in the two cases were clearly 'of the same sort and similarly motivated,' if not identical, although they were presented to establish two different causes of action." *Id.* at 1345.

A factual overlap also exists between the pending breach of contract claims and the Texas antitrust claim. Some of the same facts that Chromalloy introduced in Texas to prove the antitrust claim were later introduced in this court to prove the ceramic coating claim and the MFN claim.

For example, during the trial on the fourth counterclaim, Chromalloy introduced the Ceramic Coating Agreement into evidence in this court, as it had also done in Texas. Chromalloy elicited testimony in both trials from the same witnesses regarding the alleged re-designation of PWA 266–5 to PWA 272. Chromalloy also introduced into evidence in both trials the email from a United engineer which stated, "[w]e have tricked the system into allowing us to continue to coat PWA 266–5 even though the PWA 272 specification (for legal reasons) has superseded PWA 266–5."

During the trial on the MFN claim, Chromalloy introduced the Repair Process Agreement into evidence in this court, as it had also done in Texas. Chromalloy presented evidence in both trials to show that

division (a) of this rule.

United failed to notify Chromalloy of its exclusive agreements with other repair companies, in violation of the MFN clause of the agreement. One of the exclusive agreements, the Howmet Agreement, was introduced into evidence in both trials.

The Federal Circuit held under Texas law that "any cause of action that arises out of the same facts should be litigated in the same action." *Id.* at 1344. Based on the Federal Circuit's decision, the factual similarities between the pending breach of contract claims and the Texas antitrust claim are sufficient to trigger claim preclusion. Chromalloy argues that claim preclusion should not apply because the parties stipulated in a motion in limine in Texas that they would not litigate the breach of contract claims in that action. *See, e.g.,* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4415, at 124 (2d ed.1995) (stating that an "express agreement between the parties that an action on one part of the claim will not preclude a second action on another part of the same claim should be honored"). The Federal Circuit apparently considered the motion in limine when it reversed this court's denial of United's motion for summary judgment, and found that claim preclusion applied. *See United Techs. Corp. v. Chromalloy Gas Turbine Corp.,* 189 F.3d 1338, 1341 (Fed.Cir.1999). Therefore, in light of the Federal Circuit's decision, the court finds that a sufficient factual overlap exists between the Texas action and the Delaware action to preclude Chromalloy from re-litigating the ceramic coating claim and the MFN claim.

b. *Was it practicable to try the breach of contract claims in Texas?*

Chromalloy argues that even if factual similarities exist between the Texas action

and the Delaware action, it was not practicable to try the breach of contract claims in Texas because 1) the claims did not accrue until after the Texas case began, and 2) the claims fell within this court's exclusive patent jurisdiction under 28 U.S.C. § 1338(a).[8]

i. *Does claim preclusion apply even though the claims may have accrued after the Texas case began?*

Chromalloy argues that it should not be precluded from litigating its breach of contract claims in Delaware because the claims did not accrue until after the Texas case began. Under Texas law, however, a plaintiff is barred from subsequent suit if it omits disputes that arose after the filing of the first petition but prior to the filing of an amended petition. *Sovereign Camp v. Helm,* 94 S.W.2d 521, 523 (Tex.Civ.App. 1936). Chromalloy argues that it did not know about the breach of contract claims on August 30, 1995 when it filed its original petition in Texas state court. However, Chromalloy knew of the claims before August 16, 1998 when it filed its third amended petition in Texas, because by that time, Chromalloy had already asserted the claims in this court. Therefore, the court finds that Chromalloy could have raised the breach of contract claims in the Texas action.

ii. *Do the breach of contract claims fall within the federal court's exclusive patent jurisdiction?*

Chromalloy further contends that it could not have brought its breach of contract claims in Texas state court because the claims fell within the federal court's exclusive patent jurisdiction under 28 U.S.C. § 1338(a).[9] Patent law jurisdiction

---

**8.** 28 U.S.C. § 1338(a) provides:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

**9.** 28 U.S.C. § 1338(a) provides:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

"extends only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). A breach of contract claim under state law may raise a substantial question of federal patent law if the court, in deciding the claim, is required to interpret a patent and determine whether a product infringes the claims of the patent. *U.S. Valves, Inc. v. Dray,* 212 F.3d 1368, 2000 WL 656227, at *4 (Fed.Cir. May 22, 2000).

In this case, the court does not need to interpret United's patents to determine if United breached the licensing agreements. Rather, the court must interpret the terms of the licensing agreements to determine if United breached the agreements. Therefore, the court finds that Chromalloy's breach of contract claims do not raise a substantial question of federal patent law. Because the claims do not fall under the federal court's exclusive patent jurisdiction, Chromalloy could have raised the claims in Texas state court.

The ceramic coating claim and the MFN claim arise out of the same facts as the Texas antitrust claim. Chromalloy could have asserted all three claims in the Texas action. Because it did not, Chromalloy is precluded from litigating the ceramic coating claim in this court. *See* 189 F.3d at 1344. Therefore, the court will enter judgment as a matter of law in favor of United and against Chromalloy on the ceramic coating claim and the MFN claim.

## C. *United's Motion for Post–Appeal Restitution*

United moves for post-appeal restitution following the Federal Circuit's decision to vacate the court's August 14, 1998 order requiring United to provide its proprietary technology to Chromalloy. United asks the court for four types of relief: 1) the return of all proprietary information provided to Chromalloy pursuant to the court's August 14, 1998 order; 2) an order directing Chromalloy to cease using such information; 3) an accounting by Chromalloy for benefits received from its use of the technology; and 4) imposition of a constructive trust requiring Chromalloy to disgorge any future profits that it may earn from the technology.

Chromalloy counters that the motion for post-appeal restitution should be denied because it has stopped using the pertinent information and it is in the process of returning the information to United. Chromalloy argues that United is not entitled to an accounting because there is no evidence that Chromalloy profited from the technology. Finally, Chromalloy argues that United is not entitled to a constructive trust because Chromalloy's use of the technology was lawful.

Because the Federal Circuit vacated this court's order requiring United to provide its proprietary information to Chromalloy, United is entitled to recover any information that it provided Chromalloy pursuant to the court's order. At this time, however, the court will not order the restitution that United requests. The court finds that the specific restitution requested is not necessary because Chromalloy is already returning United's property. The court invites United to renew its motion in the event that it does not recover property that it provided to Chromalloy pursuant to the now vacated order.

The court will not order the other categories of restitution that United seeks. United and Chromalloy have been repairing jet engines together since 1975. United expressed a willingness to share its proprietary information with Chromalloy when it entered into the Repair Process Agreement in 1985. Chromalloy agreed to compensate United for its use of proprietary information. The Repair Process Agreement provides specific protections in the event that repairs are eliminated from the scope of the agreement. Thus, the

court finds that the Repair Process Agreement protects United from Chromalloy's misuse of United's property and adequately compensates United for any benefit Chromalloy may have earned from the property.

### III. *CONCLUSION*

Because the court finds that it lacks jurisdiction to further adjudicate the repair approval claims in the third counterclaim, the court will deny Chromalloy's motion for findings of fact regarding those claims. The court also finds that the MFN portion of the third counterclaim and the ceramic coating claim in the fourth counterclaim are barred by claim preclusion. Rather than granting United's renewed motion for summary judgment on these claims, the court will enter judgment in favor of United and against Chromalloy pursuant to Rule 52(c). Finally, for the reasons set forth above, the court will deny United's motion for post-appeal restitution.

The court will enter an order in accordance with this opinion.