280 F.3d 1376
 Howard STEARN, Ronald J. Fontenault, Michael Gonzales, William L. Jernigan and George K. Maynard, Petitioners, and
Randolph Bremby, Brenda K. Smith, Marcus H. Roane, Sharon E. Bremby and William G. Burke, Petitioners, and
Robert L. Phillips and Jarrell S. Weldon, Petitioners,
v.
DEPARTMENT OF THE NAVY, Respondent.
 No. 01-3013.
 No. 01-3026.
 No. 01-3027.
 United States Court of Appeals, Federal Circuit.
 DECIDED: February 15, 2002.
 
 COPYRIGHT MATERIAL OMITTED Neil C. Bonney, Bonney & Allenberg, P.C., of Virginia Beach, VA, for petitioners Howard Stearn, Ronald J. Fontenault, Michael Gonzales, William L. Jernigan and George K. Maynard.
 Jeffrey A. Belkin, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel were Doris S. Finnerman and Bryant G. Snee.
 Before SCHALL, GAJARSA, and LINN, Circuit Judges.
 LINN, Circuit Judge.
 
 
 1
 Petitioners seek review of a Merit Systems Protection Board ("Board") decision denying their petitions for enforcement of an Opinion and Order of the Board ordering the Department of the Navy ("the Navy") to grant petitioners law enforcement officer retirement credit ("LEO credit"). Basing its determinations on a regulation, the Navy limited petitioners' entitlement to LEO credit to a period of one year prior to the dates on which petitioners submitted their initial requests for the credit. In this appeal, petitioners challenge the validity of the regulation at issue.
 
 
 2
 The Board found petitioners' appeals to be barred by principles of res judicata, because petitioners failed to challenge the validity of the regulation in appealing an earlier denial of LEO credit by the Navy. However, in the Bremby and Stearn actions, the Navy failed to timely raise the affirmative defense of res judicata. This constituted a waiver of the res judicata defense. Accordingly, with respect to those appeals, we reverse the finding of res judicata. We affirm the finding of res judicata in the appeal of petitioners Phillips and Weldon.
 
 
 3
 The Board further concluded that the regulation at issue was valid and that petitioners were not entitled to a waiver of the filing deadlines set forth therein. Because the Board's findings of fact are supported by substantial evidence, and its legal conclusions are not in error, we affirm.
 
 BACKGROUND
 
 4
 Petitioners submitted requests for LEO coverage under 5 U.S.C. § 8336(c) in December 1996 and January 1997. In June of 1997, the Navy issued its determinations denying LEO coverage. The memorandum denying coverage began by quoting 5 C.F.R. § 831.906(e), which provides that "[c]overage in a position or credit for past service will not be granted for a period greater than 1 year prior to the date that the request from an individual is received...." 5 C.F.R. § 831.906(e) (2001). The closing paragraph of the memorandum echoed the regulatory language, notifying the petitioner of "his right to appeal the last 1 year of service on the MERITS of his claim...."
 
 
 5
 Petitioners then appealed to the Board. The appeals did not challenge the validity of 5 C.F.R. § 831.906(e). Nor was the regulation challenged at the hearing before the administrative law judge. In the subsequent initial decision, the Navy's determinations were reversed and the Navy was directed to grant the petitioners the appropriate amount of LEO retirement credit. Stearn v. Dep't of the Navy, No. DC-0831-97-0869-I-1, slip op. at 14 (M.S.P.B.1997) (initial decision). The validity of the regulation containing the one-year period was not called into question by this decision, or during subsequent briefing to the full Board, which affirmed, as modified, the administrative law judge's decision for most of the petitioners. Stearn v. Dep't of the Navy, 81 M.S.P.R. 551 (1999); Bremby v. Dep't of the Navy, 81 M.S.P.R. 450 (1999). The Board's decision in these cases was not appealed and thus became final.
 
 
 6
 The Bremby and Stearn groups of petitioners submitted petitions for enforcement to the Board in May and September of 1999; in the accompanying memoranda, these petitioners challenged the validity of 5 C.F.R. § 831.906(e) for the first time. In response, the Navy supplied notices of compliance to petitioners, informing them of their effective dates of LEO credit, which were approximately one year prior to their applications for credit, in accordance with the regulation. The Navy's responses to the petitions for enforcement did not raise the issue of a res judicata bar to the claim of invalidity of 5 C.F.R. § 831.906(e). The administrative law judge denied petitioners' enforcement petitions. Among other grounds, the judge based his rulings on a sua sponte finding that any challenge to the validity of 5 C.F.R. § 831.906(e) was precluded by res judicata, since petitioners did not raise the issue in the earlier appeal from the Navy's denial of LEO credit, "[a]lthough they had opportunities to do so...." Bremby v. Dep't of the Navy, No. DC-0831-97-0806-C-1, slip op. at 3 (M.S.P.B. Sept.1, 1999) (initial decision); Stearn v. Dep't of the Navy, No. DC-0831-97-0869-C-1, slip op. at 4 (M.S.P.B. Sept. 14, 1999) (initial decision). The full Board denied petitioners' petition for review. Bremby v. Dep't of the Navy, No. DC-0831-97-0806-C-1 (M.S.P.B. Aug.24, 2000) (final order); Stearn v. Dep't of the Navy, No. DC-0831-97-0869-C-1 (M.S.P.B. Aug. 16, 2000) (final order).
 
 
 7
 The cases of petitioners Robert L. Phillips and Jarrell S. Weldon were remanded to the administrative law judge for further consideration. Phillips v. Dep't of the Navy, 81 M.S.P.R. 462 (1999). On remand, the administrative law judge again directed the Navy to grant the two petitioners the appropriate amount of LEO credit. Anderson v. Dep't of Defense, No. DC-0831-97-0836-B-1 (M.S.P.B. July 23, 1999) (initial decision). Neither party petitioned for review of that decision, which became final in August 1999.
 
 
 8
 After receiving this favorable remand decision, petitioners Phillips and Weldon submitted a petition for enforcement to the Board in May of 2000; as before, it was at this point that petitioners challenged the validity of 5 C.F.R. § 831.906(e) for the first time in the case. The Navy, apprised of the availability of a res judicata defense by the earlier decisions, responded to the petition by properly raising the defense, based on petitioners' failure to raise the invalidity issue in the initial appeal. The Navy also noted that a notice of compliance had been supplied to petitioners, granting them approximately one year of LEO credit from the date of their applications in accordance with 5 C.F.R. § 831.906(e). The administrative law judge denied petitioners' petition for enforcement, citing among other grounds the timely raised defense of res judicata. Phillips v. Dep't of the Navy, Nos. DC-0831-97-0880-C-2, DC-0831-97-0884-C-2, slip op. at 3 (M.S.P.B. May 19, 2000) (initial decision). As before, the full Board denied petitioners' petition for review. Phillips v. Dep't of the Navy, Nos. DC-0831-97-0880-C-2, DC-0831-97-0884-C-2, 87 M.S.P.R. 532 (M.S.P.B. Sept.28, 2000) (final order).
 
 
 9
 We have jurisdiction over these consolidated appeals from the final Board decisions under 5 U.S.C. § 7703(b)(1).
 
 DISCUSSION
 A. Standard of Review
 
 10
 The standard of review in an appeal from a decision of the Board is strictly limited by statute. We may reverse a decision of the Board only if it is:
 
 
 11
 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 12
 (2) obtained without procedures required by law, rule, or regulation having been followed; or
 
 
 13
 (3) unsupported by substantial evidence.
 
 
 14
 5 U.S.C. § 7703(c) (2000); Carr v. Soc. Sec. Admin., 185 F.3d 1318, 1321 (Fed.Cir.1999). A determination of whether res judicata applies to the facts of a case is a matter of law. See United Techs. Corp. v. Chromalloy Gas Turbine Corp., 189 F.3d 1338, 1342-43 (Fed.Cir.1999); Case v. United States, 88 F.3d 1004, 1008 (Fed.Cir.1996).
 
 B. Analysis
 1. Res Judicata
 
 15
 Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The doctrine serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and ... encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).
 
 
 16
 Where a party has notice that a regulation is being applied, an attack on the validity of that regulation is an issue that can be raised in an ensuing action. Here, petitioners were placed on notice in all three appeals that the Navy was applying 5 C.F.R. § 831.906(e) by clear statements in the memoranda denying LEO credit. Petitioners' challenge to the validity of 5 C.F.R. § 831.906(e) thus could have been raised in their initial appeals to the Board. Despite the fact that petitioners did not raise the issue at any point during the initial proceedings before the administrative law judge, nor in their petition for review of the resulting initial decision, the petitioners were aware of the Navy's reliance on the regulation and could have challenged its validity at that time. Res judicata thus was available to the Navy as a defense to all three of the enforcement actions.
 
 
 17
 However, the Board has held that res judicata is waived if not timely raised. Castle v. Dep't of the Treasury, 68 M.S.P.R. 417, 423 n. 6 (1995); cf. Fed.R.Civ.P. 8(c). In practice before the Board, a defense is timely raised at any point before the end of the conference held to define the issues in the case. 5 C.F.R. § 1201.24(b) (2001).
 
 
 18
 In the Bremby and Stearn enforcement petition actions, the Navy failed to timely raise the res judicata defense. Notwithstanding this, the Board made a sua sponte finding of res judicata. The Supreme Court has recently noted that such sua sponte findings of res judicata might be appropriate in "special circumstances. Most notably, `if a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised.'" Arizona v. California, 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (quoting United States v. Sioux Nation, 448 U.S. 371, 432, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (Rehnquist, J., dissenting)) (emphasis added). However, "[w]here no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar sua sponte, thereby eroding the system of party presentation so basic to our system of adjudication." Id. at 412-13, 100 S.Ct. 2716. Such "special circumstances," which would justify a sua sponte determination of res judicata, are not present in this case. While the challenge to the regulation "could have been raised," in fact it was not and the Board did not actually decide the question of the validity of 5 C.F.R. § 831.906(e) in the first appeal. Because the Navy failed to affirmatively plead, and thus waived, the res judicata defense, and because the Board had not actually ruled on the issue in the previous litigation, we find the "special circumstances" needed to justify the Board's sua sponte finding of res judicata absent in the Bremby and Stearn appeals. Thus, the Board's dismissal of these appeals on res judicata grounds was in error.
 
 
 19
 In the Phillips enforcement petition action, however, the Navy timely raised the defense. Thus, the Board's reliance on res judicata grounds to dismiss Phillips's challenge to the regulation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 
 
 20
 Notwithstanding the dismissal of each action on res judicata grounds, the Board proceeded in each case to reach the merits of petitioners' attack on the validity of 5 C.F.R. § 831.906(e). Since the Board erred in dismissing the Bremby and Stearn actions on res judicata grounds, we will review the Board's determinations on the merits of the validity challenge in those cases.
 
 2. Validity of the Regulation
 
 21
 In the Bremby and Stearn actions, petitioners attack the validity of 5 C.F.R. § 831.906(e), the regulation cited by the Navy in its initial responses to petitioners' applications for LEO service credit. Petitioners challenged the res judicata finding in their briefs to this court, thus preserving the issue for appeal. These petitioners seek to establish invalidity on three grounds. First, they argue that the regulation is contrary to law. Second, they assert that the regulation does not set forth a time limit for filing applications for LEO service credit, but instead represents an "ambiguous and illogical denial of earned LEO service credit." Third, they argue that the one-year limit of § 831.906(e) violates constitutional guarantees of due process. The Board, rejecting these contentions, found that "sections 831.906(e) and (f), which include circumstances under which the 1 year time limit for retroactive LEO coverage may be waived, is a reasonable interpretation of the statute." Bremby v. Dep't of the Navy, No. DC-0831-97-0806-C-1, slip op. at 5 (M.S.P.B. Sept.1, 1999) (initial decision). For the following reasons, we find the Board's decision consistent with law.
 
 
 22
 In relevant part, 5 C.F.R. § 831.906 reads as follows:
 
 
 23
 (e) Coverage in a position or credit for past service will not be granted for a period greater than 1 year prior to the date that the request from an individual is received under paragraphs (b), (c), or
 
 
 24
 (d) of this section by the employing agency, the agency where past service was performed, or OPM.
 
 
 25
 (f) An agency head, in the case of a request filed under paragraph (b) or (c) of this section, or OPM, in the case of request filed under paragraph (d) of this section, may extend the time limit for filing when, in the judgment of such agency head or OPM, the individual shows that he or she was prevented by circumstances beyond his or her control from making the request within the time limit.
 
 
 26
 The Supreme Court has established, in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), a two-part inquiry in cases in which a court reviews an agency's construction of a statute that it administers. First, the court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43, 104 S.Ct. 2778. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. 2778. Where Congress has delegated authority to the agency to promulgate regulations elucidating statutory provisions, the resulting regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S.Ct. 2778.
 
 
 27
 Congress has authorized the Office of Personnel Management ("OPM") to administer the Civil Service Retirement System ("CSRS"), to promulgate regulations implementing the CSRS, and to adjudicate all claims thereunder:
 
 
 28
 (a) The Office of Personnel Management shall administer this subchapter. Except as otherwise specifically provided herein, the Office shall perform, or cause to be performed, such acts and prescribe such regulations as are necessary and proper to carry out this subchapter.
 
 
 29
 (b) Applications under this subchapter shall be in such form as the Office prescribes. Agencies shall support the applications by such certificates as the Office considers necessary to the determination of the rights of applicants. The Office shall adjudicate all claims under this subchapter.
 
 
 30
 5 U.S.C. § 8347 (2000). The CSRS statute makes no reference to a deadline for requesting a determination as to LEO status. Neither does it provide for a regulatory time limit for requesting a determination on LEO retirement coverage. 5 C.F.R. §§ 831.906(e) and (f), which address these issues and are the focus of this appeal, are products of notice-and-comment rulemaking. See Law Enforcement Officers and Firefighters, 51 Fed.Reg. 45,471 (proposed Dec. 19, 1986) (to be codified at 5 C.F.R. §§ 831.901-831.914); 52 Fed.Reg. 47,893 (Dec. 17, 1987) (final rule effective Jan. 19, 1988) (codified at 5 C.F.R. §§ 831.901-831.914); 58 Fed.Reg. 64,366 (interim rule effective Dec. 7, 1993) (codified at 5 C.F.R. §§ 831.901-831.914). The Supreme Court has recently reaffirmed that notice-and-comment rulemaking is "significant ... in pointing to Chevron authority...." United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 2173, 150 L.Ed.2d 292 (2001). Given these facts, we have little hesitation in according 5 C.F.R. §§ 831.906(e) and (f) Chevron deference. Accordingly, it is appropriate to defer to these regulations unless we conclude that they are "arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844, 104 S.Ct. 2778.
 
 
 31
 We turn first to petitioners' argument that the regulations are contrary to the statute. Petitioners construct their argument using three statutory provisions. First, they note that 5 U.S.C. § 8336(c)(1) provides that "[a]n employee who is separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer ... is entitled to an annuity." Turning next to 5 U.S.C. § 8331(12) for a definition of "service," petitioners find that this means "employment creditable under section 8332 of this title." The capstone to petitioners' argument is then provided by 5 U.S.C. § 8332(b): "[t]he service of an employee shall be credited from the date of original employment to the date of separation on which title to annuity is based in the civilian service of the Government." Petitioners conclude from the edifice they have constructed that "[t]he statute ... creates a legal entitlement to service credit from the date of original employment for individuals who actually perform the duties of a LEO" (emphasis added).
 
 
 32
 We disagree. Consistent with the language of 5 C.F.R. § 831.906(e), OPM interprets the term "service" in 5 U.S.C. § 8332(b) as referring simply to service within the Federal government generally, which may itself entitle an employee to an annuity. See 5 U.S.C. §§ 8336(a) (2000) (providing for an annuity at age 55 after completing 30 years of service); 8336(b) (2000) (providing for an annuity at age 60 after completing 20 years of service). The reasonableness of OPM's interpretation is clear from the words "from the date of original employment" used in the statute; without further qualification, this provision can only refer to service generally within the Federal government, not to any specialized service such as LEO service. Petitioners' construction of the statute would require specialized LEO credit from the date of entry into Federal employment if the employee had, at any point in his Federal career, held a LEO-qualified position. The statute cannot be read to require such an incongruous outcome. The construction of the statute adopted by OPM and embodied in 5 C.F.R. § 831.906(e), providing a one-year period from entry into a position during which the employee may establish entitlement to full LEO credit, is reasonable. Since OPM's interpretation is reasonable, we are not permitted to substitute our own construction of the statute. Chevron, 467 U.S. at 844, 104 S.Ct. 2778. We accordingly find that 5 C.F.R. § 831.906(e), which establishes a one-year limit for coverage for past LEO service from the date of application, is not manifestly contrary to the statute.
 
 
 33
 Nor do we find the regulation to be arbitrary or capricious. At the time the regulation was first promulgated, OPM faced frequent cases of application for coverage many years after employees left positions. "Frequently, this delay resulted in only stale, secondary evidence such as affidavits from two employees, each `remembering' what the other person's job duties were 20 years ago being available. This ... created administrative problems for both the agencies and OPM in verifying the exact duties of the position in question." 51 Fed.Reg. 45,471 (Dec. 19, 1986). A one-year period of retroactive coverage operated to insure that the evidence submitted would be "current [and] primary...." Id. Such a requirement also operates to encourage employees to seek an early determination of LEO status, allowing them to retire at an early age. This is in accord with the objective of Congress in enacting the 1974 LEO amendments, which was to "liberalize retirement provisions so as to make it feasible for [law-enforcement officers] to retire at age 50." S.Rep. No. 948, 93rd Cong., 2d Sess.1974 (June 19, 1974), reprinted in 1974 U.S.C.C.A.N. 3698, 3699. Since 5 C.F.R. § 831.906(e) accomplishes these objectives, we find that the regulation is neither arbitrary nor capricious.
 
 
 34
 Petitioners also argue that 5 C.F.R. §§ 831.906(e) and (f) are ambiguous and illogical. They base this contention on the fact that an older version of the regulations made reference to a submission deadline, September 30, 1989, for requests for LEO credit for any past periods of service. Requests received after that deadline were subject to the one-year retroactive credit limit. Requests from Individuals, 52 Fed. Reg. 47,893 (Dec. 17, 1987) (codified at 5 C.F.R. § 831.908). This September 30, 1989 deadline was removed from the regulation once the date had passed. Requests from Individuals, 58 Fed.Reg. 64,366 (Dec. 7, 1993) (codified at 5 C.F.R. § 831.906). Petitioners argue that the "time limit" of the current 5 C.F.R. § 831.906(f) is a vestigial remnant of this deadline and renders the provision meaningless. However, while the earlier version of the regulation made reference to "time limits for filing," 52 Fed.Reg. 47,893, 47,896 (Dec. 17, 1987), the current version refers only to a "time limit for filing," 5 C.F.R. § 831.906(f) (2001). It is reasonable to assume that the earlier version of the regulation was understood to contain two time limits: the September 30, 1989 deadline, and a date one year from entry on duty in a LEO-qualifiable position, which represented the deadline for filing to receive full credit for all past LEO service. Once the first time limit was dropped from the regulation, the text was modified to reflect that only a single time limit was retained. We do not find the regulation ambiguous, nor do we agree with petitioners that 5 C.F.R. § 831.906(e) sets forth no time limit for filing an application for LEO credit.
 
 
 35
 Lastly, petitioners seek to challenge 5 C.F.R. §§ 831.906(e) and (f) on due process grounds. Such an attack is unavailing. Petitioners, as potential retirees, have no protected property interest in a particular level of retirement benefits. "We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendments." Lyng v. Payne, 476 U.S. 926, 942, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986); accord American Postal Workers Union, AFL-CIO v. United States Postal Serv., 707 F.2d 548, 554 (D.C.Cir.1983) ("Potential retirees have no protected property interest in any particular level of retirement benefits."). Even assuming petitioners did have such an interest, they were placed on notice of the requirements for establishing LEO status by the publication of the final version of 5 C.F.R. § 831.908 (the predecessor to the current § 831.906) in the Federal Register on December 17, 1987. 52 Fed.Reg. 47,893 (Dec. 17, 1987); see 44 U.S.C. § 1507 (1994) (providing that publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it").
 
 
 36
 Accordingly, we hold that the Board's determination that petitioners had not shown that 5 C.F.R. §§ 831.906(e) and (f) are invalid, ambiguous, or violative of due process is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 
 
 37
 3. Entitlement to Extension of the Time Limit
 
 
 38
 Applicants next contend that, even if the regulation is valid, they have shown that they are entitled to a waiver of its application. They assert that their lack of knowledge of the necessity to file an application for LEO credit is the result of "the admitted failure of any government entity, to inform them of any time limitation." However, applicants were placed on constructive notice of the regulation by its 1987 publication in the Federal Register. Furthermore, lack of knowledge is not a ground for waiver of the time limit under 5 C.F.R. § 831.906(f). Unlike the analogous Federal Employees Retirement System regulation, 5 C.F.R. § 842.804(c), which lists as grounds for waiver "that the employee was unaware of his or her status or was prevented by cause beyond his or her control from requesting that the official status be changed," 5 C.F.R. § 831.906(f) lists only that the individual shows that "he or she was prevented by circumstances beyond his or her control from making the request within the time limit."
 
 
 39
 Petitioners rely on Elias v. Department of Defense, 114 F.3d 1164 (Fed.Cir.1997), for the proposition that lack of actual notice constitutes circumstances beyond the employee's control for purposes of waiver of the time limit for filing. However, the circumstances in Elias were very different than those in this case. In Elias, the appellant retired from Federal service before the regulation establishing the one-year time limit was promulgated. Id. at 1165. Furthermore, he had served in the early 1960s in a position that no longer existed in 1986, when LEO classification of similar positions took place. Id. at 1168. There was thus no way for Elias to know after he retired that his previous position was eligible for LEO credit, and under these circumstances, we found that he was indeed prevented by circumstances beyond his control from timely filing an application for LEO credit and was entitled to a waiver. Id. In contrast, the petitioners in the present case were all employed in 1987, when the regulation establishing filing deadlines was published. Their positions had not, like Elias's, been abolished. Under these circumstances, petitioners have not shown that they were prevented by circumstances beyond their control from filing timely applications, and consequently are not entitled to a waiver of the time limit. Accordingly, we hold that the Board's decision to this effect was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 
 CONCLUSION
 
 40
 We hold that, for the Phillips group of petitioners, the Navy timely raised the affirmative defense of res judicata, and the Board's dismissal of the enforcement action on those grounds was proper. However, for the Bremby and Stearn group of petitioners, we hold that the Navy waived the res judicata defense and the Board consequently erred in applying it sua sponte. Furthermore, and to the extent the Board made a determination notwithstanding its sua sponte reliance on res judicata that 5 C.F.R. §§ 831.906(e) and (f) are not arbitrary, capricious, or manifestly contrary to the statute, and are neither ambiguous nor violative of due process, we affirm. Finally, we also affirm the Board's holding that the Bremby and Stearn petitioners have not shown that they were prevented by circumstances beyond their control from filing timely applications for LEO credit, and that they are thus not entitled to a waiver of the time limit.
 
 AFFIRMED-IN-PART, REVERSED IN PART
 COSTS
 
 41
 No costs.